[8 NYS3d 79]

CARLOS RODRIGUEZ PASTOR, Appellant, v PETER DEGAETANO, Individually, as Escrow Agent, and as Executor of MONIQUE UZIELLI, Deceased, et al., Respondents, et al., Defendants.

First Department, April 21, 2015

 

## APPEARANCES OF COUNSEL

*David Bolton P.C.*, Garden City (*David Bolton* of counsel), for appellant.

*Stern Tannenbaum & Bell LLP*, New York City (*David S. Tannenbaum*, *Rosemary Halligan* and *Jonathan Kotler* of counsel), for respondents.

## OPINION OF THE COURT

Acosta, J.

The primary question raised by this appeal is whether a buyer can be forced to conclude a purchase of real property where the seller has not definitively resolved a third-party cooperative's challenge to the buyer's right of exclusive use over a portion of the property. We find that, because questions of fact remain as to whether the seller obtained unequivocal assurances that the co-op's board of directors would not interfere with the buyer's right of exclusivity, the seller has not demonstrated that it was ready, willing, and able to close the sale. In addition, there are questions of fact as to whether the seller breached the implied covenant of good faith and fair dealing.

Therefore, the seller is not entitled to summary judgment permitting it to retain the buyer's down payment.

## I. Facts and Background

On March 21, 2012, plaintiff entered into a contract of sale to purchase the shares allocated to a penthouse apartment from defendants-respondents—executors of the Estate of Monique Uzielli (hereinafter the Estate)—for $27.5 million, paying a 10% deposit of $2.75 million. The parties intended to close the sale after obtaining the unconditional consent of the board of directors of the cooperative corporation (the board or the co-op). A crucial element of the transaction related to plaintiff's exclusive use of the apartment's terrace, a right emanating from the proprietary lease.[1] Soon after the contract of sale was signed, however, the board attempted to eliminate plaintiff's right, as the prospective owner of the penthouse, to use the terrace exclusively, as provided by the co-op's governing documents.

By letter dated May 17, 2012, the board's managing agent informed plaintiff that "[i]t is important to note that the upper roof [above the penthouse] accessible by the stairs on the terrace may be used by shareholders at any time as a common area of the building." The stairs referenced in the letter had previously been used only for maintenance purposes; the other shareholders in the building had never been granted access to the roof as a common area, presumably because the only way they could reach the rooftop would be by traversing the penthouse terrace and, consequently, impeding the owner's exclusive use thereof.[2] Notably, the stairs are not depicted in the penthouse floor plan that was annexed to the contract of sale (the contract plan).

---

1. The proprietary lease contained a provision (art I, para "Eighth") stating that the penthouse owner "shall have and enjoy the exclusive use of the roof appurtenant to such apartment [i.e., the terrace] as shown on the plan of the penthouse," except that, among other things, the co-op would be permitted to access the roof for maintenance and the like.
Paragraph 52 of the rider to the contract of sale further provided, in relevant part,

> "Seller shall deliver to Purchaser at or prior to Closing the 'plan of the penthouse' ('Plan') referred to in the Proprietary Lease Article I, Paragraph Eighth, from the [co-op] or an agent thereof, addressed to the Purchaser which Plan shall be substantially similar to that of the floor plan annexed hereto as Exhibit A."

2. The letter further stated that the shareholders would access the maintenance stairs "via . . . a short path on the [penthouse] terrace level . . . to the higher level."

The board's position "came as a complete shock" to plaintiff. Although the board notified the parties in June 2012 that it approved the sale (without imposing any conditions), it again sought to interfere with plaintiff's right of exclusivity when, in an August 2012 email, the Board proposed a "conditional consent agreement" to be signed by plaintiff and the Estate. The proposed agreement stated that the plan of the penthouse was "either missing or lost"; that "[t]he entire Penthouse Roof is a common area"; that "the Cooperative and its shareholders have the right to use . . . the [maintenance stairway] in their sole discretion for the purpose of obtaining access to the Penthouse Roof"; and that "[s]uch parties, further, have the right to use a pathway . . . leading from the internal Building stairs to the [maintenance stairs]."

The Estate was similarly troubled by the board's position. According to plaintiff's affidavit, plaintiff and the Estate refused to sign the conditional consent agreement, and one of the Estate's executors advised plaintiff not to sign it.

The Estate commenced an action against the co-op and its managing agent in September 2012 (the separate action), seeking an order, inter alia, directing the co-op to provide a copy of the plan of the penthouse, requiring the board to withdraw the conditional consent agreement, directing the board to acknowledge that its consent to the sale was unconditional, and declaring that the roof cannot become a common area and "that the Terrace is for the exclusive use and enjoyment of the lessee of the Penthouse and that the residents of the Building and others may not use it as a pathway to the Upper Roof."

Although the separate action was ultimately resolved when the co-op provided multiple floor plans and withdrew its requirement that the parties sign the conditional consent agreement, the Estate never obtained the declaratory judgments it originally sought.

In its complaint, the Estate alleged that access to the roof above the penthouse "was 'strictly prohibited' to other shareholders and residents of the Building" and only used for authorized maintenance "[d]uring the entirety of the 53 year period" in which Ms. Uzielli owned the apartment. The Estate further argued that "[p]ermitting residents of the Building to regularly access the Upper Roof via the Terrace staircase destroys an obvious and critical component of the value of the Penthouse and also violates the right to the exclusive use and enjoyment granted . . . under the terms of the [Proprietary] Lease," and

that the board's attempt to "convert the Upper Roof to a common area . . . threaten[ed] the Buyer that the private and exclusive use of the Terrace will be terminated, thereby irreparably harming the value of the Penthouse and potentially inducing the Buyer to cancel the Contract of Sale."

The co-op and its managing agent answered the separate action complaint in December 2012. The Estate moved for partial summary judgment, and the court issued an order on May 23, 2013, directing the co-op to provide the Estate with a copy of "a floor plan [at] issue in the motion."

On May 28, 2013, the co-op's attorney provided the Estate with "the floor plan for the Penthouse Unit" (the May plan) and stated that the board had "waived the conditional consent clause of the buyer." Later that day, the Estate forwarded the May plan to plaintiff and notified him of the board's waiver. This did not resolve the exclusivity issue to plaintiff's satisfaction, however.

By letter dated May 29, plaintiff's counsel informed the Estate that plaintiff was electing to cancel the contract and request return of the deposit because, he asserted, the May plan was not substantially similar to the contract plan. Plaintiff determined that the plans were not substantially similar, as required by paragraph 52 of the rider, because the May plan showed a "large stairway extending into the southeast terrace of the [penthouse]." This was the same maintenance stairway that the board referenced in its May 2012 letter, when it initially stated its intention to treat the rooftop as a common area accessible via the maintenance stairs on the penthouse terrace.

In an apparent attempt to allay plaintiff's concerns and proceed with the sale, the Estate again moved for partial summary judgment in the separate action and obtained from the co-op a new floor plan (the June plan), which omitted the maintenance staircase. On the record, at a hearing on June 6, 2013 (so ordered on June 11), the court ruled that the June plan was substantially similar to the contract plan.[3] The co-op's attorney also stated that the board would "adopt" the June plan and

---

**3.** Attached to the so-ordered transcript of the proceedings is the contract plan, the substantially similar June plan (reflecting minor changes with respect to two interior details), and a plan from the same architectural firm and bearing the same date as the May plan (except that, as counsel for the board advised the court, "the staircase has been removed"). Significantly, nothing in the record of the separate action indicates that the court made

had withdrawn its requirement that the parties sign the conditional consent agreement. Significantly, however, the board did not withdraw its position as stated in the May 2012 letter, nor did it unequivocally and affirmatively acknowledge plaintiff's right of exclusive use over the terrace or state that the board would refrain from taking future action to interfere with that right.

The Estate then rejected plaintiff's attempted cancellation of the contract by letter dated June 12, 2013, and enclosed the June plan, claiming that it had until closing to provide a plan of the penthouse under paragraph 52 of the rider. In addition, the Estate purported to schedule a time-of-the-essence closing date and warned plaintiff that his failure to appear at the closing would be deemed a breach of the contract, entitling the Estate to retain the down payment.

In response, plaintiff rejected the Estate's attempt to set a closing date by letter dated June 25, 2013, asserting that the submission of the June plan, which omitted the maintenance staircase, confirmed that the May plan was not substantially similar to the contract plan. Plaintiff further contended that paragraph 52 of the rider—which required the Estate to provide the plan "at or prior to Closing"—did not "allow the Estate to provide one version of the plan 'prior to Closing' and a different version 'at Closing.'"

On July 3, 2013, the Estate appeared at the closing, and plaintiff did not appear.

In September 2013, plaintiff commenced this action seeking, inter alia, return of the $2.75 million deposit. Before discovery had been conducted, the Estate moved for summary judgment directing the release of the deposit from escrow and dismissing plaintiff's causes of action. On the record at oral argument, Supreme Court granted the Estate summary judgment on their first counterclaim and dismissed several of plaintiff's causes of action.

The motion court found that the Estate was ready, willing, and able to close at the time-of-the-essence closing, and because plaintiff failed to appear on the closing date, the Estate was entitled to retain the contract deposit. The court also accepted the Estate's argument that it had until the closing to tender a plan that was substantially similar to the contract plan—or, in

any finding that the May plan was substantially similar to any of those plans.

other words, to "cure any defect" arising from the May plan. If plaintiff objected to the May plan, said the court, his proper remedy was to appear at the closing and raise the objections. Thus, the court dismissed plaintiff's causes of action alleging breach of contract and seeking the return of the deposit. The court also dismissed plaintiff's claim for rescission of the contract based on mutual mistake, ruling that there was no mistake since plaintiff and the Estate correctly believed at the time of the contract that the subject matter was a penthouse apartment with exclusive use of the terrace. Finally, the court dismissed plaintiff's claim alleging that the Estate breached the implied covenant of good faith and fair dealing by issuing the time-of-the-essence letter, finding that the Estate was simply attempting in good faith to close the deal.

Plaintiff appeals.

## II. Discussion

### a. Whether the Estate was Ready, Willing, and Able to Conclude the Sale

First, in order to obtain summary judgment permitting it to retain the deposit, the Estate "must establish that it was ready, willing, and able to perform on the time-of-the-essence closing date, and that the purchaser failed to demonstrate a lawful excuse for its failure to close" (*Donerail Corp. N.V. v 405 Park LLC*, 100 AD3d 131, 138 [1st Dept 2012]; *see also Cipriano v Glen Cove Lodge #1458, B.P.O.E.*, 1 NY3d 53, 63 [2003]). The Estate failed to carry its burden, as it has not adduced evidence that the co-op unequivocally withdrew its position with respect to the penthouse owner's right of exclusivity granted in the proprietary lease. That is, even assuming the Estate satisfied paragraph 52 of the rider by providing a plan that was substantially similar to the contract plan, it has not shown that the board categorically recognized plaintiff's right to exclusively use the terrace or stated that it would not seek to abrogate that right in the future. Additionally, the co-op attempted to interfere with plaintiff's right of exclusivity soon after the contract of sale was signed, subsequently requested plaintiff to relinquish his right of exclusivity via a conditional consent agreement, and suspiciously submitted the May plan, which included the very maintenance staircase that was a point of strident contention. Even though the co-op subsequently submitted the June plan, pursuant to a court order, plaintiff contends that none of the plans provided by the co-op are *the*

plan, because the co-op admitted that the original plan was lost and the Estate has not shown whether the board formally adopted any of the new plans. In the circumstances of this case, given the co-op's earlier statement that it planned to interfere with plaintiff's exclusive use of the terrace and its submission of several different floor plans—one of which roused plaintiff's suspicions that the co-op remained intent on accessing the rooftop via the terrace staircase—the Estate needed to obtain a full retraction of the co-op's position before it could close the sale, and it has failed to show that it did so.

The co-op, by seeking to terminate the penthouse owner's right of exclusivity as early as May 2012, cast a pall over the transaction. That plaintiff would have an ongoing relationship with the board, which unreasonably attempted to terminate his right of exclusivity after he entered into a contract of sale with the seller, understandably gave him trepidation about proceeding with the transaction. This is particularly problematic given that plaintiff was not purchasing a house or condominium, in which case he would have essentially unrestrained ownership, but instead contracted to purchase shares in a co-op (*see* 1 Rasch, New York Law & Practice of Real Property §§ 15:4, 15:11 [2d ed]). The lingering specter of a co-op board's refusal to comply with the governing document's provision regarding the owner's right to exclusive access over the subject property would make any reasonable purchaser uneasy.

The Estate recognized that this "cloud" needed to be lifted— indeed, the Estate acknowledged that the board's position, if successful, would damage the value of the penthouse—and commenced the separate action against the co-op. Notwithstanding that the Estate obtained multiple floor plans and the co-op's withdrawal of the conditional consent requirement, the record before us suggests that it failed to achieve a sufficient resolution of the exclusivity issue.[4] As this Court recently noted, "A decision on the merits warrants the issuance of a declaration" (*Greenwich Ins. Co. v City of New York*, 122 AD3d 470, 472 [1st Dept 2014], citing *Hirsch v Lindor Realty Corp.*, 63 NY2d 878, 881 [1984])—relief the Estate initially sought in the separate action but apparently abandoned—without which the

---

4. We note that, despite the Estate's argument that it did not pursue the separate action on plaintiff's behalf, the fact remains that he was "a mere contract vendee of shares in [the] cooperative corporation and, accordingly, . . . was without standing to enforce the proprietary lease against the cooperative" (*Woo v Irving Tenants Corp.*, 276 AD2d 380, 380 [1st Dept 2000]).

court's purported findings and the parties' equivocal statements and submissions fall well short of resolving the issue.

For example, the Estate's counsel stated before the motion court that the co-op conceded in the separate action (1) that it was withdrawing the conditional consent requirement, and (2) "that *the shareholders do not have the right to use [the maintenance] staircase* to access the roof" (emphasis added).[5] Yet the record is devoid of evidence corroborating that the co-op ever made the latter statement or its equivalent. The board first stated its position on the exclusivity issue in its May 2012 letter, months before it requested the parties to sign the conditional consent agreement. Accordingly, the board's subsequent "waiver" of the conditional consent requirement did not also constitute a retraction of its May 2012 statement that the shareholders could access the rooftop through the penthouse terrace.

Indeed, this is unsurprising, because it was in the co-op's interest to provide minimal assurances—i.e., withdrawing its conditional consent requirement without fully retracting its May 2012 position, and submitting the May plan, which included the maintenance staircase—in order to maintain a future claim that the rooftop is a common area and that the shareholders would have a right to traverse plaintiff's terrace. And it was in the Estate's interest, as the seller, to accept whatever minimal assurances the co-op provided, in order to proceed with the closing. These interests, however, conflict with plaintiff's interest in receiving what he bargained for.

In the context of the board's previous attempts to interfere with plaintiff's right of exclusivity, and contentious litigation between the Estate and the co-op—in which the co-op submitted the May plan, which plaintiff understood as representing the co-op's unwavering intent to convert the rooftop into a common area accessible via the maintenance stairs—anything short of an unequivocal assurance was inadequate. Even the subsequent June plan, without more, would not suffice. Without the board's affirmative and unequivocal acknowledgment that the shareholders have no right to traverse the terrace, and that it would not take future action to revoke

---

**5.** There is a critical difference between these two statements. The first indicates that the board will approve the sale absent the parties' acknowledgment of the *co-op's right* to traverse the penthouse terrace; the second indicates that the co-op recognizes *plaintiff's right* of exclusivity and will cease any attempts to interfere with that right.

plaintiff's exclusive right to use that space, plaintiff lacked adequate assurances that his right of exclusivity (and the market value of the apartment) would remain undisturbed if he consummated the sale (*see Voorheesville Rod & Gun Club v Tompkins Co.*, 82 NY2d 564, 571 [1993] ["(A) purchaser ought not to be compelled to take property, the possession or title of which he may be obliged to defend by litigation. He should have a title that will enable him to hold his land free from probable claim by another, and one which, if he wishes to sell, would be reasonably free from any doubt which would interfere with its market value" (internal quotation marks omitted)]).

The Estate has not shown that plaintiff was given these assurances and, consequently, it failed to demonstrate its ability to close (*see Donerail Corp.*, 100 AD3d at 138-139 [seller demonstrated ability to close where buyer was informed at closing that seller's title insurer was prepared to issue title insurance without exception for existing mortgage as required by contract of sale, and deposition of counsel to seller's title insurer confirmed same]; *see also Pesa v Yoma Dev. Group, Inc.*, 18 NY3d 527, 532-533 [2012]). Moreover, absent a showing that plaintiff received unequivocal assurances that the co-op would not interfere with his right of exclusivity going forward, the Estate cannot show that plaintiff lacked a lawful excuse to abstain from attending the closing (*see Rivera v Konkol*, 48 AD3d 347, 348 [1st Dept 2008] ["only reason" closing did not occur was plaintiff buyer's failure to deliver balance of purchase price "due to the alleged embezzlement of funds by one of her attorneys and to her own failure to fulfill her contractual obligation to apply for a mortgage loan"]; *see also Cipriano*, 1 NY3d at 62-63; *904 Tower Apt. LLC v Mark Hotel LLC*, 853 F Supp 2d 386, 397 [SD NY 2012]).

Discovery may reveal that the plaintiff was given the requisite assurances, and that at least one of the plans offered at the closing was "substantially similar" to the contract plan, but that discovery remains outstanding. Accordingly, summary judgment should be denied pursuant to CPLR 3212 (f). Facts may exist that are within the exclusive knowledge of the Estate (and the co-op), and plaintiff has made reasonable attempts to obtain discovery; he argued before the motion court that discovery was needed, and he had already served the Estate with a request for the production of documents, which was not answered (*see* CPLR 3212 [f]; *Voluto Ventures, LLC v Jenkens & Gilchrist Parker Chapin LLP*, 44 AD3d 557 [1st Dept 2007];

*Berkeley Fed. Bank & Trust v 229 E. 53rd St. Assoc.*, 242 AD2d 489 [1st Dept 1997]; *International Rescue Comm. v Reliance Ins. Co.*, 230 AD2d 641 [1st Dept 1996]). Furthermore, contrary to the Estate's contention that "[p]laintiff is not entitled to discovery, as there is no genuine issue of material fact warranting the same," this is not the appropriate standard. Discovery is warranted with respect to *relevant* matters (CPLR 3101; *Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 407 [1968]; Siegel, NY Prac § 344 [5th ed]); plaintiff needs to present a triable issue of fact to withstand summary judgment, but need only show that the matter is relevant to obtain discovery. Therefore, the Estate's motion for summary judgment should be denied without prejudice to renewal after disclosure.

b. Whether the Estate Consistently Acted in Good Faith

Next, a denial of summary judgment is similarly warranted because questions of fact exist regarding whether the Estate breached the covenant of good faith and fair dealing, implied in all New York contracts (*511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 153 [2002]), when it submitted the May plan to plaintiff and sought to set a closing date. Viewing the facts in the light most favorable to plaintiff (*see Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 NY3d 96, 105 [2006]), we are compelled to agree with plaintiff that the May plan's inclusion of the maintenance staircase rendered it substantially dissimilar to the contract plan. Although the parties agree that the stairway existed when the contract was executed, we must accept as true plaintiff's allegation that the board added the stairway to the May plan in order to bolster its claim that the rooftop is a common area and that shareholders would be permitted access to the roof via the maintenance stairs on the penthouse terrace (*see Graham v Columbia Presbyt. Med. Ctr.*, 185 AD2d 753, 754 [1st Dept 1992]).

Plaintiff raises questions as to whether the Estate colluded with the co-op in accepting the May plan and abandoning the separate action after receiving the June plan and the board's withdrawal of its conditional consent requirement. He argues that the Estate readily accepted those concessions by the co-op in the separate action—without obtaining the declaratory judgments it initially sought—in order to force the closing, irrespective of whether the board intended to take future action to

interfere with plaintiff's right of exclusivity.[6] Although plaintiff infers that the Estate's haste in setting the closing date might have been pursuant to a side agreement between the Estate and the co-op during the separate action, it is also possible that the Estate did so without such an agreement but with a lackadaisical pursuit of relief in the separate action in order to close the sale.

These questions remain unanswered and, given the absence of discovery, the Estate is not entitled to summary judgment (*see* discussion of CPLR 3212 [f] in section II [a], above). Plaintiff is entitled to discovery of the Estate and the board's discussions and exchanges in an attempt to determine whether there was collusion between them, as he alleges. In addition, he is entitled to discovery of evidence concerning when and how the co-op first decided it would attempt to interfere with the prospective penthouse owner's right of exclusivity vis-à-vis the terrace, and whether it ever actually abandoned its position on that issue. The veracity of the Estate's self-serving statement that "[t]here is simply nothing to discover" remains to be tested.

## c. Rescission Based on Mistake

Lastly, plaintiff's cause of action for rescission based on mistake was properly dismissed, because there was no mistake at the time of the contract about the penthouse owner's right to exclusive use of the terrace (*see Matter of New York Agency & other Assets of Bank of Credit & Commerce Intl. [Superintendent of Banks of State of N.Y.—CITIC Indus. Bank]*, 90 NY2d 410, 424 [1997]; *Da Silva v Musso*, 53 NY2d 543, 552 [1981]). The proprietary lease clearly defined the penthouse owner's right of exclusivity, and the co-op's attempt to interfere with that right does not evince a mistake over the subject matter at the time of contracting.

## III. Conclusion

Accordingly, the order of the Supreme Court, New York County (Jeffrey K. Oing, J.), entered on or about March 20,

---

**6.** We reject plaintiff's additional argument that the timing of the Estate's summary judgment motion in the separate action was suspicious. His claim that the Estate moved before issue was joined is without merit, because the record on appeal reveals that the co-op and its managing agent answered the separate action complaint—and, thus, issue was joined (*see* Siegel, NY Prac § 279 [5th ed])—in Dec. 2012, approximately five months before the Estate's motion.

2014, which, to the extent appealed from as limited by the briefs, granted defendants-respondents' motion for summary judgment on their first counterclaim and for dismissal of the first and third through sixth causes of action as against them, should be modified, on the law, to deny the motion as to the counterclaim and as to the dismissal of the first, third, fifth, and sixth causes of action, and otherwise affirmed, without costs.

Tom, J.P., Saxe, Moskowitz and Feinman, JJ., concur.

Order, Supreme Court, New York County, entered on or about March 20, 2014, modified on the law, to deny the motion for summary judgment on the first counterclaim and for dismissal of the first, third, fifth and sixth causes of action, and otherwise affirmed, without costs.