[24 NYS3d 292]

PRINCES POINT LLC et al., Appellant, v MUSS DEVELOPMENT L.L.C. et al., Respondents, et al., Defendant.

First Department, February 4, 2016

**APPEARANCES OF COUNSEL**

*Rosenberg Calica & Birney LLP*, Garden City (*John S. Ciulla* of counsel), for appellant.

*Herrick, Feinstein LLP*, New York City (*Scott E. Mollen, Darlene Fairman* and *Adam J. Stein* of counsel), for respondents.

### OPINION OF THE COURT

Acosta, J.

The questions raised by this appeal are whether a prospective purchaser of real property anticipatorily breaches a contract of sale by commencing an action against the seller for rescission of the contract before the closing date, and whether, in the event of the buyer's repudiation, the seller is required to

show that it was ready, willing, and able to complete the sale (by obtaining certain government approvals as a condition precedent to closing) in order to retain the deposit and certain other payments as liquidated damages. We hold that, because a rescission action unequivocally evinces the plaintiff's intent to disavow its contractual obligations, the commencement of such an action before the date of performance constitutes an anticipatory breach. As to the second question, we hold that the seller was not required to show that it was ready, willing, and able to complete the sale because the buyer's anticipatory breach relieved it of further contractual obligations.

## I. Facts

The Muss family acquired a 23-acre parcel of land in Staten Island known as Princes Point in the early 1970s. The family formed two limited partnerships to own the property: defendants Allied Princes Bay Co. and Allied Princes Bay Co. #2 (collectively, APB). Defendant Joshua Muss is the general partner of APB, and defendant Muss Development L.L.C. is the management company that oversaw various entities and development projects in which the Muss family holds an interest, including Princes Point.

In the 1980s, the New York State Department of Environmental Conservation (DEC) declared the property an inactive hazardous waste site. To obtain a delisting of the property as a hazardous waste site, APB, Joshua Muss, and Muss Development L.L.C. (collectively, defendants) conducted remediation work, which involved the construction of a revetment (a seawall designed to prevent erosion) along the entire shoreline of the property. The property was delisted in 2001, and defendants began to seek the government approvals necessary to develop the property (the development approvals).

In 2004, plaintiff entered into an agreement with APB to purchase the property for $35,910,000, making an initial down payment of $1,878,500. One of the conditions precedent to closing was defendants' having delivered to plaintiff the development approvals (except for any waived by the relevant city agencies). The contract provided for a closing date 30 days after the date on which defendants provided notice to plaintiff that all development approvals had been obtained, "but in no event later than the Outside Closing Date," which was defined as 18 months from the execution and delivery of the agreement by each of the parties. If, despite diligent efforts, defendants were unable to obtain all development approvals on or prior to

the outside closing date, either party could terminate the agreement upon 30 days' notice. In the event of termination, plaintiff would receive a refund of the deposit (and "compaction payments"),[1] and the parties would be released from the majority of their obligations. As an alternative to terminating the contract, plaintiff had the option of waiving the development approvals and closing the sale with an abatement in the purchase price.

In 2005, after Hurricane Katrina, the DEC conducted a visual inspection of the revetment, discovered problems, and called for additional work to be done. Because of the resulting increase in time and cost needed to obtain the requisite development approvals, defendants advised plaintiff that they would exercise their right to terminate the contract and return the down payment unless plaintiff agreed to amend the contract according to certain terms.

In March 2006, the parties amended their contract in writing to include the following terms: (1) extend the outside closing date to July 22, 2007 (the new outside closing date); (2) increase the purchase price to $37,910,000; (3) increase the down payment to $3,995,500; (4) require plaintiff to reimburse defendants for 50% of the costs related to completing the revetment work and obtaining the development approvals; and (5) require plaintiff to forbear from commencing "any legal action" against defendants in the event that the development approvals were not issued or the revetment work was not completed by the new outside closing date (the forbearance provision).

Facing additional problems with the revetment, the parties extended the new outside closing date on a month-to-month basis, because defendants, as stated in a May 2008 email, believed they were "on track" to receive the few remaining government approvals. The final date to which the new outside closing date was extended was July 22, 2008 (the final outside closing date).

Despite the contract's forbearance provision, plaintiff commenced the instant action on June 20, 2008—prior to the final outside closing date—claiming that it had been defrauded into entering into the contract and the 2006 amendment by defendants' alleged misrepresentation that the revetment had been

---

1. The contract provided for the buyer to provide the seller with progressive "Compaction Payments" related to the excavation and refilling of the land.

built in accordance with the DEC's specifications. In effect, plaintiff sought rescission of the 2006 amendment and specific performance of the 2004 contract (with an abatement in the purchase price to account for defendants' failure to acquire the development approvals).

All of plaintiff's causes of action have since been dismissed (*see* 94 AD3d 588, 588 [1st Dept 2012] ["(P)laintiff accepted all defects in the premises and was not relying on any assurances made by defendants as to the condition of the property"]; 110 AD3d 564 [1st Dept 2013]; 116 AD3d 574 [1st Dept 2014]). All that remained after the dismissal of plaintiff's claims was the counterclaims of defendants, who moved for partial summary judgment (on their counterclaims to declare the contract terminated, to declare that plaintiff materially breached the contract, thereby entitling defendants to retain the down payment and compaction payments, and to award defendants attorneys' fees and costs). The motion court granted the motion in its entirety, determining that the contract had expired and was terminated by its own terms, that plaintiff anticipatorily breached the contract by commencing this action, and that defendants were entitled to retain the down payment and compaction payments as liquidated damages, and referred the matter to a special referee to determine contractual attorneys' fees and costs in favor of defendants. Plaintiff appeals.

## II. Discussion

### a. Whether Plaintiff Anticipatorily Breached the Contract by Commencing the Instant Action

An anticipatory breach, or repudiation, occurs when a party to a contract unequivocally communicates to its counterpart before performance is due, by a statement or voluntary affirmative act, that it will avoid performance of its contractual duties (*see Norcon Power Partners v Niagara Mohawk Power Corp.*, 92 NY2d 458, 463 [1998] ["A repudiation can be either a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach or a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach" (internal quotation marks omitted)]). "[W]hen a party repudiates contractual duties prior to the time designated for performance and before all of the consideration has been fulfilled, the repudiation entitles the nonrepudiating party to claim damages for total breach" (*id.* at 462-463 [internal quotation marks omitted]). Whether a party

has anticipatorily breached a contract is ordinarily a question of fact reserved for a jury, but a court may decide the issue as a matter of law when the purported repudiation is embodied in an unambiguous writing (*see Briarwood Farms, Inc. v Toll Bros., Inc.*, 452 Fed Appx 59, 61 [2d Cir 2011]).

There is an apparent absence of case law regarding whether the commencement of an action, particularly one seeking rescission, is itself an anticipatory breach. In *Auten v Auten* (308 NY 155 [1954]), the Court of Appeals addressed whether an action for separation constituted a repudiation of a prior separation agreement, but did not answer the question, because it determined that the law of England controlled (*id.* at 159).

This Court has held that an action seeking a declaratory judgment does not constitute an anticipatory breach (*see Cato Corp. v Roaman*, 214 AD2d 383 [1st Dept 1995] [tenant's action against landlord for declaration of right to sublet premises was not anticipatory breach, where tenant continued performance of paying rent while litigation was pending]). Several courts in other jurisdictions agree (*see Settlement Funding, LLC v AXA Equit. Life Ins. Co.*, 2010 WL 3825735, *11, 2010 US Dist LEXIS 104451, *33 [SD NY, Sept. 30, 2010, No. 06 CV 5743 (HB)] [collecting cases]). The proposition is a rational one, because a declaratory judgment action merely seeks to define the rights and obligations of the parties. If a plaintiff succeeds in obtaining a declaratory judgment, he or she may then proceed to the performance of duties under the contract (as defined by the judgment).

An action seeking rescission of a contract is markedly different. In contrast to a declaratory judgment, a plaintiff who succeeds in obtaining rescission can no longer perform: his or her contractual duties will have evaporated. Indeed, by bringing this action for rescission, plaintiff sought to have a court "declare the contract void from its inception and to put or restore the parties to *status quo*" (*County of Orange v Grier*, 30 AD3d 556, 557 [2d Dept 2006], quoting *Schwartz v National Computer Corp.*, 42 AD3d 123, 125 [1st Dept 1973]).

▮ We therefore agree with the motion court that, by "commencing this lawsuit [before the final closing date] and seeking the particular relief of rescission of the Amendment and abatement of the purchase price, [plaintiff] unequivocally notified the Muss defendants of its intention to renounce its contractual duties" (42 Misc 3d 1219[A], 2014 NY Slip Op 50100[U], *5

[2014]; *see Al-Shahrani v Hudson Auto Traders, Inc.*, 89 AD3d 968, 969 [2d Dept 2011] ["by commencing this (rescission) action, (infant plaintiff) unequivocally manifested his intention to disaffirm the contract"]). Plaintiff did not simply seek to define its rights under the parties' agreement; it sought to nullify the agreement entirely. Although plaintiff argues that it only sought rescission of the 2006 amendment and specific performance of the 2004 contract, there was one amended contract which defined the parties' rights and obligations. Plaintiff anticipatorily breached that contract by commencing this action.[2]

## b. Whether Defendants Were Required to Show That They Were Ready, Willing, and Able to Complete the Sale

The question is whether, in the context of plaintiff buyer's anticipatory breach, defendants must show that they were ready, willing, and able to close on the sale of the property—specifically, by obtaining the development approvals as a condition precedent to closing—in order to retain the down payment and compaction payments as liquidated damages. We answer this question in the negative, primarily because plaintiff's anticipatory breach discharged defendants' future obligations (including to fulfill conditions precedent) under the contract.

"Besides giving the nonrepudiating party an immediate right to sue for damages for total breach, a repudiation discharges the nonrepudiating party's obligations to render performance in the future" (*Computer Possibilities Unlimited v Mobil Oil Corp.*, 301 AD2d 70, 77 [1st Dept 2002] [citation omitted], *lv denied* 100 NY2d 504 [2003]). Moreover, "[a] party will be relieved or discharged from the performance of futile acts or conditions precedent . . . upon the failure or refusal by a party to honor its obligations under their contract" (*Special Situations Fund III v Versus Tech.*, 227 AD2d 321, 321 [1st Dept 1996], *lv denied* 88 NY2d 815 [1996]; *see also Sunshine Steak, Salad & Seafood v W.I.M. Realty*, 135 AD2d 891, 892 [3d Dept 1987]; *accord Palazzetti Import/Export, Inc. v Morson*, 2001 WL 1568317, *9, 2001 US Dist LEXIS 20243, *28 [SD NY, Dec.

---

**2.** In any event, although the parties did not frame their arguments in this way, it appears that plaintiff was in breach of the contract by commencing this action in violation of the forbearance provision. Plaintiff had certain options under the contract in the event that defendants failed to obtain the development approvals: it could have (1) terminated the contract and received a refund of its down payment, or (2) proceeded to the closing and received an abatement of the purchase price. The course plaintiff chose, however—commencing litigation against the sellers—was explicitly forbidden by the contract.

6, 2001, No. 98 Civ 722 (FM)], *affd* 54 Fed Appx 698 [2d Cir 2002]).

The contract required defendants to obtain the development approvals as a condition precedent to closing, but defendants were absolved of that obligation upon plaintiff's anticipatory breach. Whether defendants were in fact "on track" to obtain the approvals by the closing date is of no moment; the record demonstrates that they had been engaged in significant efforts to obtain the approvals until plaintiff's repudiation, and it was possible, however unlikely, that they could have obtained the approvals before the final outside closing date (which the parties had been extending on a monthly basis). They were not required to continue to pursue the approvals after plaintiff repudiated the contract by commencing the instant action seeking rescission (*see* 4 Corbin on Contracts § 978 at 925 [1951] ["The willingness and ability to perform need not continue after the repudiation; it is merely required that they should have existed before the repudiation and that the plaintiff would have rendered the agreed performance if the defendant had not repudiated"]). Once plaintiff commenced the instant action, it would have been futile and wasteful for defendants to continue to seek the approvals in preparation for a closing that plaintiff was tirelessly seeking to avoid.[3]

We acknowledge that, although it appears that the "ready, willing, and able" requirement was devised exclusively to ensure that prospective purchasers of property are legally and financially able to conclude their purchases (*see* Black's Law Dictionary [10th ed 2014], ready, willing, and able), the concept has been expanded to apply to sellers of real property in some circumstances (*see e.g. Rodriguez Pastor v DeGaetano*, 128 AD3d 218, 224 [1st Dept 2015], quoting *Donerail Corp. N.V. v 405 Park LLC*, 100 AD3d 131, 138 [1st Dept 2012]; *Reid v I Grant Inc.*, 94 AD3d 500 [1st Dept 2012]).

However, we have not previously considered whether a seller must make such a showing in the context of a buyer's anticipatory beach. *Pastor* and *Donerail* dealt with circumstances in which a time-of-the-essence closing date occurred and one party

---

**3.** Our decision is unaffected by defendants' concession in a 2011 affidavit by their counsel that they continued to seek but had been unable to obtain the approvals, because defendants were not required to do so after plaintiff's repudiation. Whether they continued pursuing the approvals with the hope that plaintiff or a third party would ultimately purchase the property is of no consequence here.

defaulted. Here, by contrast, plaintiff (the buyer) anticipatorily breached the contract before the closing date; as a consequence, defendants' duty of future performance, and of fulfilling conditions precedent by acquiring the development approvals, was discharged. Therefore, we need not concern ourselves with the question of whether defendants would have been ready, willing, and able to perform on the final outside closing date. As a result of plaintiff's commencement of this action, the closing never occurred.[4]

Although the parties dispute which of two Court of Appeals decisions is controlling here, neither case is directly on point. *American List Corp. v U.S. News & World Report* (75 NY2d 38 [1989])—a case on which defendants rely for the proposition that a "nonrepudiating party need not . . . tender performance nor prove its ability to perform the contract in the future" (*id.* at 44)—concerned significantly different circumstances from those at bar. In that case, a magazine entered into a 10-year contract to rent mailing lists from a supplier, and repudiated the contract after only two years. This was later discussed in *Pesa v Yoma Dev. Group, Inc.* (18 NY3d 527 [2012]), a case on which plaintiff heavily relies for the proposition that defendants were required to prove their ability to close the sale. *Pesa* distinguished *American List* by the fact that the plaintiff in that long-term contract case should not have been "forced to meet the perhaps impossible burden of showing what its financial condition would have been for many years to come," whereas "[n]o comparable burden falls on the non-repudiating party" in a failed real estate transaction (*id.* at 533).

While *Pesa* more closely resembles the instant matter because it involved a real estate transaction in which one party repudiated, it does not answer the question presented here. The Court of Appeals in *Pesa* held that a buyer suing a repudiating seller was required to demonstrate its readiness, willingness, and ability to close in order to recover damages for breach of contract. As the Court noted, this requirement is reasonable because "[i]t is axiomatic that damages for breach of contract are not recoverable where they were not actually caused by the breach—i.e., where the transaction would have failed, and the damage would have been suffered, even if no breach occurred" (*id.* at 532).

---

4. Although a closing date did not occur in *Reid*, it is distinguishable from this case because, like *Pastor* and *Donerail,* it did not concern an anticipatory breach.

Importantly, however, *Pesa* did not rule that a buyer seeking to recover a *down payment* must make any showing of its ability to perform.[5] Nor would it have, because it is well established that although a purchaser must make a "ready, willing, and able" showing in an action for specific performance or damages where a seller has repudiated, such a showing is not required where the purchaser merely seeks the return of its down payment (*see Sunrise Assoc. v Pilot Realty Co.*, 170 AD2d 214, 215 [1st Dept 1991], citing *Zev v Merman*, 134 AD2d 555, 558-559 [2d Dept 1987], *affd* 73 NY2d 781 [1988]; *Scull v Sicoli*, 247 AD2d 852 [4th Dept 1998]). The Court of Appeals' agreement with this proposition is implied in *Pesa*'s approving citation to *Scull* (*see Pesa*, 18 NY3d at 532), a case in which the Fourth Department simultaneously held that a seller's repudiation entitled the buyers "to recover their down payments *without proof* that they were ready, willing and able to complete the transaction" and that the buyers *were required* but failed to prove that they were ready, willing, and able to complete the sale in order to obtain specific performance or recover damages for breach of contract (247 AD2d at 853 [emphasis added]; *see also Bigler v Morgan*, 77 NY 312, 318 [1879]).

This is a sensible and reconcilable dichotomy, because a buyer who seeks the return of a down payment is advancing its restitutionary interest by attempting to recover the benefit it conferred on a repudiating seller, in order to prevent the latter's unjust enrichment; in such a case, a "ready, willing, and able" showing is not required, because the buyer is not alleging damages caused by the seller's breach (*see Sunrise Assoc.*, 170 AD2d at 215; *Scull*, 247 AD2d at 853; Glen Banks, New York Contract Law § 14:6 [28 West's NY Prac Series]; *In re Asia Global Crossing, Ltd.*, 404 BR 335, 340-342 [SD NY 2009]).

Conversely, where, as here, a seller seeks to retain a down payment as liquidated damages for a buyer's breach, it is not seeking restitution, because the down payment is not a benefit that the seller has conferred upon the buyer (*see* Restatement [Second] of Contracts § 370). Rather, a seller in those circumstances is—like the buyer in *Pesa*—seeking damages that were

---

5. In fact, the Court's recitation of the facts confirms that the seller had already returned the down payment *before* the buyers commenced the litigation (*id.* at 531). So, when the Court referred to a "damages suit like this one" (*id.*) in determining that the buyers were required to show they were ready, willing, and able to close the deal, it necessarily was not concerned with a buyer seeking to recover a down payment.

caused by (or were "directly flowing from") the breach (*Reid*, 94 AD3d at 501; *see also Truck Rent-A-Ctr. v Puritan Farms 2nd*, 41 NY2d 420, 423-424 [1977]). This explains why, although the *Pesa* Court did not rule that a nonrepudiating seller must make a "ready, willing, and able" showing in the face of a buyer's repudiation, we have recognized that the requirement applies to a seller seeking to retain a down payment in the absence of its counterpart's repudiation (*see Reid*, 94 AD3d at 501).

■ Nevertheless, as discussed above, defendants in this action are not required to demonstrate their ability to close the sale, because plaintiff's anticipatory breach discharged their duty to obtain the development approvals as a condition precedent to closing. The outcome might have been different if plaintiff had defaulted on the closing date (*see Rodriguez Pastor*, 128 AD3d 218; *Donerail Corp.*, 100 AD3d 131). But we are not confronted with that situation. Plaintiff commenced this action for rescission, thereby repudiating the contract of sale before the closing date occurred and discharging defendants from their obligation to fulfill conditions precedent. Therefore, defendants were entitled to retain plaintiff's down payment and compaction payments as liquidated damages.

## III. Conclusion

Accordingly, the judgment of the Supreme Court, New York County (Charles E. Ramos, J.), entered June 3, 2014, to the extent appealed from as limited by the briefs, declaring, on defendants Allied Princes Bay Co., Allied Princes Bay Co. #2, L.P., Muss Development L.L.C., and Joshua L. Muss's third counterclaim, that plaintiff anticipatorily breached its real estate contract with APB, entitling defendants to recover the down payment and to retain certain other payments, should be affirmed, with costs.

SWEENY, J.P., RICHTER and MANZANET-DANIELS, JJ., concur.

Judgment, Supreme Court, New York County, entered June 3, 2014, to the extent appealed from as limited by the briefs, affirmed, with costs.