Dye, J.
By written lease dated July 26, 1947 the plaintiffs Córtese in the first entitled action leased from the defendant Connors for a term of five years, with the privilege of renewal for a like term, the premises known as 117 Robinson Street, Binghamton, New York. Upon its expiration in 1952, the lease was renewed for another five-year term. It contained a covenant, viz.: “5. The Landlord agrees that in the event of the Landlord’s desire to sell the above mentioned property before the expiration of this Lease, the Tenants shall have the first option to purchase the same under the terms at which it is offered for sale.”
While the lease was still in effect and on or about May 27, 1953, the plaintiff Eisenstein in the second of the above-entitled actions made and entered into a written contract whereby he agreed to buy and the defendant Connors agreed to sell the same premises leased to Córtese, for the sum of $21,750, without first submitting same to Córtese for an election under the terms of the option. When the tenants Córtese heard of the making of *268 the purchase and sale contract, they commenced this action to compel conveyance of the premises to them in reliance on their option. This gave the landlord pause and she refused to close the contract of purchase and sale with Eisenstein and he, in turn, sued for its specific performance. For convenience of trial, the actions were consolidated.
It is undisputed that sometime in March or April of 1953 the landlord listed the premises with a licensed real estate broker who publicly advertised them for sale at $35,000 and began looking for a customer. Because he knew that the lease gave the tenants Córtese a first option to purchase, the broker contacted James Córtese, one of the tenants, and told him of the listing at $35,000 but suggested that if they were interested the owner might consider an offer from them of $25,000. Córtese, however, treated this approach as an opening for negotiation, and countered it with generous comment as to the bad condition of the building, its need of repairs, saying that he did not think it was worth $20,000 and that he would not offer any more than that.
The landlord was not justified in treating that informal conversation between broker and tenants as an election by the latter to relieve her from any further obligation thereunder. According to the plain language of the option, the landlord obligated herself to give the tenants at any time before the expiration of the lease “ the first option to purchase ”, the leased premises, “ under the terms at which it is offered for sale ”. This was an obligation continuing during the effective term of the lease, which could only be terminated at the election of the tenants. It conferred upon the tenants a valuable contract right which should not be lost or forfeited in the course of an informal oral conversation with a broker, who — so far as the tenants knew — had no authority to suggest that an offer of $25,000 from them might be acceptable to the owner-landlord. The listing on its face represented the extent of his authority. The $25,000 price mentioned by the broker was — at most — an opening gambit which the tenant recognized as bargaining talk; his indifferent response was the customary countermove in playing the game of the market place. In this informal setting it was not for the landlord or her broker to construe the oral conversation as effectuating a cancellation of the covenant in the long-term written lease, nor may it be deemed tantamount to a waiver or *269 an estoppel, since the condition precedent essential to a discharge of the landlord’s obligation was not present, that is, rejection by the tenants of an offer that the landlord was willing to accept — pending which the landlord was in no position to sell to others. Furthermore, it is well settled that the landlord was in no position to call upon the tenants to exercise their option or lose it prior to receipt of a bona fide offer from a third person at a price she was willing to accept (R. I. Realty Co. v. Terrell, 254 N. Y. 121, 124; Jurgensen v. Morris, 194 App. Div. 92; Sargent v. Vought, 194 App. Div. 807; Gilbert v. Van Kleeck, 284 App. Div. 611). Here it is undisputed that the Eisenstein offer was never submitted to the tenants for an election prior to its acceptance by the landlord, failing which she defaulted in her obligation to them under the express terms of the lease.
Accordingly, the judgment in favor of defendant Connors should be reversed and judgment granted against her in favor of the plaintiffs Córtese for specific performance as demanded m their complaint and, since the judgment in favor of plaintiff Eisenstein for specific performance as demanded in his complaint against defendant Connors can no longer be carried out, it must be reversed.
Conwat, Ch. J., Desmond, Fuld, Froessel, Van Voorhis and Burke, JJ., concur.
Judgments reversed and matter remitted to Equity Term for further proceedings in accordance with the opinion herein, with costs in all courts in the first action to plaintiffs against defendant Connors and without costs in the second action.