[801 NE2d 388, 769 NYS2d 168]

Michael Cipriano, Appellant-Respondent, v Glen Cove Lodge #1458, B.P.O.E., et al., Respondents, and Gasper Buffa, Respondent-Appellant.

Argued September 11, 2003; decided October 28, 2003

## POINTS OF COUNSEL

*Sordi & Sordi, LLP,* Glen Cove (*Michael Sordi* of counsel), for appellant-respondent. I. The courts below erred when they found that plaintiff was in breach of a contract to purchase real property where the seller defendant was unable to tender delivery of marketable title. (*Gargano v Rubin,* 200 AD2d 554.) II. The courts below erred when they failed to grant plaintiff a judgment for specific performance and/or to assess damages against defendants stemming from their breach of the covenant of good faith and fair dealing. (*Burwell v Jackson,* 9 NY 535; *Vought v Williams,* 120 NY 253; *BGW Dev. Corp. v Mount Kisco Lodge No. 1552 of Benevolent & Protective Order of Elks of U.S. of Am.,* 247 AD2d 565; *Progressive Solar Concepts v Gabes,* 161 AD2d 752; *Barnett v Star Mech. Corp.,* 171 AD2d 142; *S.E.S. Importers v Pappalardo,* 53 NY2d 455.) III. The courts below erred when they found, by implication, that defendant Buffa possessed a valid subsisting right of first refusal superior to plaintiff's contractual rights to purchase real property, while

still finding that plaintiff breached the contract to purchase the property.

*Vincent P. Taranto, P.C.,* Glen Cove (*Vincent P. Taranto* of counsel), for respondent-appellant. I. A seller has an affirmative obligation to present an executed contract with a third party upon demand by a holder of a right of first refusal and not relegate the holder to divining the contract's terms upon learning of its existence. (*LIN Broadcasting Corp. v Metromedia, Inc.,* 74 NY2d 54; *Rome Sav. Bank v Husted & Son,* 171 AD2d 1048; *Yudell Trust I v API Westchester Assoc.,* 227 AD2d 471; *Metropolitan Transp. Auth. v Bruken Realty Corp.,* 67 NY2d 156.) II. A purchaser's default, as a result of his failure to appear at a closing, which was over a year after the closing date in the contract, does not extinguish the right of a holder of a right of first refusal, when the seller never informed the holder of the contract of sale or its terms although duly demanded. (*Yudell Trust I v API Westchester Assoc.,* 227 AD2d 471.) III. It is a condition precedent that a seller notify a holder of a right of first refusal of an offer to purchase prior to executing a contract of sale with a third party. (*LIN Broadcasting Corp. v Metromedia, Inc.,* 74 NY2d 54; *Rome Sav. Bank v Husted & Son,* 171 AD2d 1048; *Yudell Trust I v API Westchester Assoc.,* 227 AD2d 471; *Keator v State of New York,* 23 NY2d 337.) IV. The court below erred in considering failed settlement negotiations between plaintiff and defendant Buffa in its deliberations which resulted in the dismissal of defendant Buffa's cross claim.

*Ryan, Brennan & Donnelly LLP,* Floral Park (*John M. Donnelly* of counsel), for respondents. I. The decision to hold plaintiff in default was both warranted and proper. (*Gargano v Rubin,* 200 AD2d 554; *Progressive Solar Concepts v Gabes,* 161 AD2d 752; *Shapira v United Med. Serv.,* 15 NY2d 200.) II. At all times, the Lodge and Elks acted in good faith. (*BGW Dev. Corp. v Mount Kisco Lodge No. 1552 of Benevolent & Protective Order of Elks of U.S. of Am.,* 247 AD2d 565, 92 NY2d 813; *Progressive Solar Concepts v Gabes,* 161 AD2d 752; *Barnett v Star Mech. Corp.,* 171 AD2d 142; *Calligar v Fradkoff,* 154 AD2d 495; *Mancini-Ciolo, Inc. v Scaramellino,* 118 AD2d 761.) III. The determination of the court below with respect to Buffa's claims should be affirmed. (*LIN Broadcasting Corp. v Metromedia, Inc.,* 74 NY2d 54; *Yudell Trust I v API Westchester Assoc.,* 227 AD2d 471; *Rome Sav. Bank v Husted & Son,* 171 AD2d 1048; *Bloomer v Phillips,* 164 AD2d 52; *Cestone v Brown,* 163 AD2d 563, 76 NY2d 711; *Shapira v United Med. Serv.,* 15 NY2d 200.)

**OPINION OF THE COURT**

ROSENBLATT, J.

In this real property case, we are called upon to adjudicate the rights and remedies of the three parties before us: the holder of a right of first refusal, the buyer of the property and the seller.

## I.

In June 1955, five trustees of the Benevolent and Protective Order of Elks, Glen Cove Lodge #1458 (Lodge) entered into a stipulation with Gasper Buffa—who was selling a parcel of land to the Lodge—that promised Buffa a "first option to re-purchase" the property at fair market value in the event the Lodge offered the premises for sale.[1] For the first three decades following the grant of this right, the Lodge scrupulously honored its obligations to Buffa. In October 1995, after it had received a bona fide offer to purchase the property, the Lodge extended Buffa the opportunity to exercise his right. In a letter of October 28, 1995 (inadvertently dated 1996), Buffa declined, but said he wanted to keep his "options open" should the Lodge's deal fall through. Again, in May 1996 and December 1996, the Lodge advised Buffa that it had received bona fide offers for the property and extended him the right of first refusal. In both instances, Buffa declined.

In 1997, the Lodge entered into negotiations with Michael Cipriano for the sale of the property, and on February 10, 1998, the Lodge sent Cipriano a proposed agreement. After substantial delay, the Lodge and Cipriano entered into a contract of sale on July 2, 1999. The agreement, however, was not made contingent on Buffa waiving his right of first refusal, nor did it disclose the existence of that right. Cipriano agreed to pay $550,000 for the property, with $55,000 down. The contract set August 2, 1999 as the closing date. A rider to the contract further provided that:

"In the event title is unmarketable, the sole remedy

---

1. Although the Lodge promised Buffa a right of first refusal in the June 1955 stipulation, the buyer, Michael Cipriano, maintains that Buffa does not in fact hold a valid right of first refusal. He argues that Buffa's failure to reserve his right in his July 12, 1955 bargain and sale deed to the Lodge extinguished whatever preemptive rights he may have enjoyed. We do not reach this argument because it was not preserved for our review. For the purpose of this appeal, we will assume, as did the court below, that Buffa held a valid right of first refusal.

of the Purchaser will be to accept such title as the Seller shall be able to deliver without abatement in the purchase price, or in the alternative, to cancel this Agreement and receive a refund of the Contract down payment, together with the net charges actually charged to the Purchaser for the examination of title, without insurance . . . and cost of a survey. Upon such refund . . . the Seller shall not be liable for any other costs or damages whatsoever."

When Cipriano and the Lodge entered into the contract, Cipriano evidently had notice of Buffa's outstanding right of first refusal. Indeed, Buffa and Cipriano, as long-time members of the Lodge, were well acquainted with one another. Nevertheless, based on the Lodge's representations, Cipriano was led to believe that Buffa had waived his right. In an August 3, 1999 letter, Cipriano asked the Lodge to confirm that it had Buffa's written waiver, and to produce it. The Lodge, however, ignored the request. Two days later, Cipriano informed the Lodge that Buffa had not waived his right of first refusal, and, indeed, wanted a price for the waiver. On August 9, Cipriano wrote the Lodge, demanding "immediate clarification" concerning the status of Buffa's right of first refusal.

Contrary to the Lodge's representations to Cipriano, Buffa had never waived his right of first refusal. Indeed, the Lodge never extended Buffa the opportunity to exercise his right before or after it entered into its contract with Cipriano, even though Buffa advised the Lodge of his claim. In a September 2, 1999 letter to the Lodge, Buffa expressed his "sincere interest in exercising his 're-purchase right' " and asked for a copy of the executed contract for his review. The Lodge ignored this request as well. Instead, it demanded proof of Buffa's right of first refusal. On September 20, Buffa forwarded the Lodge a copy of the 1955 agreement creating the right. He again asked the Lodge for a copy of the Lodge's contract with Cipriano, and again the Lodge ignored the request.

On September 15, 1999, the Lodge wrote Cipriano to inform him that Buffa had not effected a waiver, and it furnished Cipriano a copy of Buffa's "purported right of first refusal." The Lodge also reminded Cipriano that it was "unwilling to bring any action or proceeding or to expend any money or expense with respect to this title issue" and asked him if he was willing to take title, subject to Buffa's right. On September 24, 1999, Cipriano wrote the Lodge, asking it to clarify its position regard-

ing the status of Buffa's right of first refusal. When the Lodge failed to reply, Cipriano, by a letter dated October 4, 1999, again asked the Lodge to explain its position with respect to Buffa's rights. On October 5, in a letter to Cipriano, the Lodge reaffirmed the position it assumed in its September 15 letter: that Cipriano could take title, subject to Buffa's right of first refusal, but without abatement of the purchase price.

Meanwhile, Cipriano initiated negotiations with Buffa, with the goal of buying out Buffa's preemptive right. These discussions proved unavailing and delayed Cipriano's closing with the Lodge. Finally, in a letter to Cipriano dated December 28, 1999, the Lodge attempted to cancel its contract and returned Cipriano's down payment of $55,000. On January 3, 2000, Cipriano sent the check back, rebuking the Lodge for its attempt at unilateral cancellation. The Lodge responded on January 13, instructing Cipriano to close on January 28. It warned that time was of the essence and that it would count Cipriano's failure to appear as a default entitling it to keep the down payment. On January 26, 2000, Cipriano informed the Lodge that he was initiating litigation to quiet title and that he did not intend to close on January 28. On January 27, the Lodge informed Cipriano that he had committed an anticipatory breach and that it would keep the down payment.

Cipriano brought this action against the Lodge and Buffa. He alleged that the Lodge could not and did not deliver marketable title to the property, and that the Lodge had interfered with his contractual right to the property. Cipriano sought specific performance and damages for breach of contract. In its answer, the Lodge denied Cipriano's allegations and argued that when Cipriano signed the contract he had notice of Buffa's claims to the property. The Lodge also counterclaimed against Cipriano for failing to attend the scheduled January 28, 2000 closing. This default, the Lodge asserted, entitled it to keep the down payment. In his answer, Buffa claimed that he held a valid right of first refusal, that the Lodge violated that right by contracting with Cipriano and that it had failed to extend him an offer to purchase the property or even furnish him with a copy of the contract. Buffa moved for dismissal of Cipriano's claim and filed a cross claim against the Lodge for damages or specific performance of his right of first refusal.

On the Lodge's motion for summary judgment, Supreme Court dismissed Cipriano's claim and Buffa's cross claim and granted summary judgment on the Lodge's counterclaim. It also

granted Buffa's motion for summary judgment on Cipriano's complaint against him. The court determined that the "Lodge was always ready, willing and able to honor its contractual obligations" and that Cipriano had received his bargained-for performance. As to Buffa's cross claim, the court held that Buffa could not exercise his right of first refusal because the Lodge "[was] not selling the property to plaintiff and indeed abandoned the transaction prior to its consummation."

Cipriano and Buffa appealed. The Appellate Division modified Supreme Court's judgment, upholding dismissal of Cipriano's complaint and Buffa's cross claim, but issuing a declaration in favor of the Lodge allowing it to keep the down payment. As to Buffa, the Court observed that he had "never exercised his right of repurchase." (297 AD2d 649, 653 [2002].) Finally, the Court affirmed Supreme Court's grant of summary judgment for the Lodge on its counterclaim against Cipriano. We granted Cipriano and Buffa leave to appeal, and we now modify.

## II. Buffa's Right of First Refusal

This Court last addressed the enforceability of a right of first refusal in *LIN Broadcasting Corp. v Metromedia, Inc.* (74 NY2d 54 [1989]). All the parties claim that *LIN* supports their position. In *LIN*, we settled the question of "whether a contractual right of first refusal, which has been triggered by a contract to sell to a third party, may be exercised during the specified duration of the right but after the third-party transaction has been abandoned" (*id.* at 56-57). Stressing the difference between an option and a right of first refusal, we held that the grantor of a right of first refusal is obligated to give the holder of the right only an opportunity to buy the property. The grantor is not obligated to "render more than its promised performance . . . by keeping the offer open for the period specified in the first refusal clause" (*id.* at 62). The holder of a right of first refusal must be given the opportunity to exercise the preemptive right, but the right is extinguished when the contract with the third party expires or is abandoned.

In *Yudell Trust I v API Westchester Assoc.* (227 AD2d 471, 473 [2d Dept 1996]), the Appellate Division elaborated on our holding in *LIN* by concluding that someone who holds a right of first refusal may create a "binding contract" with the grantor by exercising the right before the third-party contract expires. The validity of this contract is not affected by "the subsequent expiration of the triggering event" (*id.*).

Had Buffa been given the opportunity to exercise his right of first refusal, this case would fall squarely under the settled authority of *LIN* or *Yudell Trust I*. One of two scenarios would result, assuming Buffa did not decline his right to buy the property: either (1) Buffa would have exercised his right of first refusal before the breakdown of the Lodge-Cipriano transaction, or (2) he would have attempted to do so after its abandonment. In the first scenario, Buffa's exercise would have created a binding offer and acceptance between him and the Lodge. In the second scenario, *LIN* would govern, and Buffa's ability to exercise his right would have evaporated.

The Lodge, however, never gave Buffa the opportunity to exercise his right of first refusal. In its earlier attempts to sell its property in 1995 and 1996, the Lodge honored an obligation to advise Buffa of any bona fide offers it received and to extend him the opportunity to buy the property on the same terms. Here, the Lodge took no steps to inform Buffa of its impending sale to Cipriano and did not make the contract subject to Buffa's right. Indeed, it ignored Buffa's repeated requests for a copy of its contract with Cipriano, as well as his written expressions of interest in exercising his right. The Lodge argues that its failure to respond to Buffa did not deny him a meaningful opportunity to exercise his right of first refusal because Buffa already knew that the Lodge had contracted to sell the property to Cipriano. Inasmuch as Buffa was apprised of the transaction, the argument goes, the Lodge was under no duty to answer his letters or inform him of the terms of its contract with Cipriano. We find this argument wholly unpersuasive.

A right of first refusal is a right to receive an offer, and the grantor's failure or refusal to extend the holder the opportunity to exercise the right constitutes a breach. As we stated in *LIN*, "[t]he effect of a right of first refusal . . . is to bind the party who desires to sell *not to sell* without first giving the other party the opportunity to purchase the property at the price specified" (74 NY2d at 60). Likewise, in *Cortese v Connors* (1 NY2d 265 [1956]), the Court held that a landlord breached the "first option to purchase" term, i.e., right of first refusal term,[2] of a lease by failing to submit a third party's offer to purchase the leased premises to the tenants. (*Id.* at 269; *see also*

---

2. We note that a right of first refusal goes by other names, including "first option to buy," "first privilege of buying," "preemptive option," "preemptive right," "preemptive right to purchase," "right of preemption,"

3 Corbin, Contracts § 11.3, at 479-480 [rev ed 1996].) Thus, an owner of land subject to a right of first refusal is obligated contractually to make an offer to the rightholder. A rightholder may be familiar with the broad contours of the grantor's transaction with a third party, but may nevertheless be handicapped in exercising the right when there is no specific offer from the grantor.[3]

Rather than extending an offer to Buffa, the Lodge ignored his repeated requests for a copy of its contract with Cipriano, as well as his written affirmations of interest in exercising his right. Through its failure to act, the Lodge denied Buffa his bargained-for performance, that is, an opportunity to exercise his preemptive right to buy the property.

Although the Lodge breached its contractual obligations to Buffa, on the unique facts before us, neither specific performance nor damages provides a satisfactory remedy for the Lodge's default. Specific performance—the principal remedy which Buffa has sought—is inapt when the relations between two parties as to the transfer of an interest in land have yet to ripen into a binding contractual agreement. Specific performance may be granted only where the holder of the right of first refusal is shown to be "ready, willing, and able to purchase the property, not only when the right ripens, but also when specific performance is ordered" (25 Williston, Contracts § 67:85, at 504 [4th ed]). Notwithstanding Buffa's letters to the Lodge or his effort to vindicate his right of first refusal through litigation, there is little in the record to support his assertion that he was ready, willing, and able to buy the property. If anything, his readiness to negotiate with Cipriano and waive his right of first refusal suggests that Buffa was less interested in buying the property than he was in selling his right. Given the haze of uncertainty surrounding Buffa's actual intent in the summer and fall of 1999, as well as the likely appreciation of the Lodge's property over the past four years, a grant of specific

---

"first right of purchase," "first-refusal-to-purchase option," and "preferential right to purchase" (see 3 Corbin, Contracts § 11.3, at 469 n 1 [rev ed 1996]).

3. At least one prominent commentator maintains that a grantor breaches its obligations under a right of first refusal when it executes a contract with a third-party vendee before procuring a waiver from the rightholder (see 3 Corbin, Contracts § 11.3, at 480 [rev ed 1996]). This is not the law in New York. The grantor of a right of first refusal may enter into a contract with a third party for the sale of subject property, as long as the contract provides that the passage of title is contingent upon a waiver by the holder of the right of first refusal (see LIN, 74 NY2d at 59).

performance enabling Buffa to purchase the Lodge's property at the 1999 contract price could yield him a potential windfall.

As an alternative to specific performance, Buffa seeks damages against the Lodge for breach of his right of first refusal. We conclude that an award of damages is not warranted under the unusual facts before us. Although the Lodge wrongfully deprived Buffa of an opportunity to exercise his right, Buffa suffered no injury as a result of the Lodge's breach. Buffa continues to hold the same right he held at the outset of the Lodge's initial 1998 negotiations with Cipriano. As in the past, Buffa can still invoke his right of first refusal against the offer of any future prospective purchaser. Moreover, he will still cast a cloud over the Lodge's title, and may seek compensation from potential buyers who want him to waive his right. Because the Lodge caused no appreciable injury to Buffa, no damages can flow from its breach.

### III. Cipriano's Down Payment

Affirming Supreme Court's grant of summary judgment for the Lodge, the Appellate Division found that the Lodge had fulfilled its contractual obligations to Cipriano and that Cipriano could have cancelled the contract and retained his down payment. The Court concluded that Cipriano had been "given more than a reasonable opportunity to perform under the contract of sale" but had failed to do so. (297 AD2d at 652.) The Lodge, the Court reasoned, was therefore entitled to hold Cipriano in default and keep the down payment.

Cipriano maintains that the courts below erred in granting the Lodge summary judgment on its counterclaim. The Lodge's failure to produce marketable title, he argues, barred it from holding him in default and retaining his down payment. Under the circumstances of this case, we agree with Cipriano.

In *Maxton Bldrs. v Lo Galbo* (68 NY2d 373 [1986]), we reaffirmed a rule that has become axiomatic: a "vendee who defaults on a real estate contract without lawful excuse, cannot recover the down payment" (*id.* at 378). Cipriano had such a lawful excuse. Although Cipriano did not appear at the January 28, 2000 closing, his failure is at least matched by the Lodge's recalcitrant behavior. To the extent the Appellate Division found that the Lodge acted in good faith in its efforts to convey title, there is no evidence in the record to support this determination (*see Smirlock Realty Corp. v Title Guar. Co.*, 63 NY2d 955, 957-958 [1984]). First, the Lodge contracted with Cipriano while

misrepresenting Buffa's readiness to waive his right of first refusal. It then handicapped Cipriano's efforts to clear title by ignoring Buffa's repeated entreaties for a copy of the contract. After that, the Lodge tried to effect a unilateral cancellation of its contract with Cipriano. The Lodge maintains that Cipriano's refusal to accept this cancellation should, in effect, estop him from attacking its failure to deliver marketable title. We are not persuaded.

We acknowledge that a rider to the Cipriano-Lodge contract relieved the Lodge of any obligation "to bring any action or proceeding or to expend any sums of money or to incur any expense in order to render title marketable." Nevertheless, this clause does not excuse the Lodge's dereliction. Where a seller draws a prospective buyer into a transaction when it cannot possibly convey marketable title and then itself stymies the efforts of the buyer to remove the encumbrance, the seller may not rely on the language of the rider to keep the buyer's down payment. Because the Lodge was in material breach of its contractual obligations to Cipriano, we conclude that Cipriano had a lawful excuse for his failure to appear on the January 28 closing date. The Appellate Division's holding that the Lodge was entitled to retain Cipriano's down payment was therefore in error.

We have reviewed Cipriano's other arguments and find them to be without merit.

Accordingly, the order of the Appellate Division should be modified, without costs, consistent with this opinion and as so modified, affirmed.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO and READ concur.

Order modified, etc.