OPINION OF THE COURT
Thomas F. Whelan, J.
It is ordered that those portions of this motion (No. 001) by plaintiffs for summary judgment on their first cause of action for declaratory relief is denied with respect to defendant Richard J. Smolian, as he defaulted in answering which precludes an award of summary judgment due to the failure to join issue and it is denied with respect to the other defendants, to whom the court awards reverse summary judgment and hereby declares that the “stranger to the deed” rule is not applicable and thus does not invalidate nor render unenforceable the preemptive right of first refusal in favor of answering defendants, Randy Smolian, Jonathan Smolian and Darielle Smolian, that is contained in certain deeds and that the plaintiffs are not free to convey the subject property without regard to said right of first refusal; and it is further ordered that those portions of this motion wherein the plaintiffs seek summary judgment on their second cause of action for a declaration that the defendants possessed of the right of first refusal must *411 match all of the terms of the contract for the sale of the subject property is denied due to the plaintiffs’ failure to establish compliance with the terms, of the right of first refusal and such cause of action is dismissed due to a lack of a justiciable controversy.
This case involves conflicting claims concerning a right of first refusal set forth in various deeds. Despite the fact that the plaintiffs agreed to the restriction in two deeds that granted a right of first refusal to each of the defendants, and thereafter expressly reaffirmed' that right by placing same in a quitclaim deed when transferring the property to a limited liability corporation, and after participating in a celebrity-studded publicity campaign to induce the defendants into waiving that right of first refusal, plaintiffs now assert that the right of first refusal held by the three answering defendants is contrary to the “stranger to the deed” rule and should be declared void and unenforceable. That single assertion, which is before the court, is apparently one of first impression.
Upon review of this record, the court finds that the “stranger to the deed” rule is not applicable to this right of first refusal and declines to extend the rule to such situations.
Statement of Facts
Plaintiff, Alexander Peters, is a co-owner of the subject properties located at 42 La Foret Lane and 46 La Foret Lane in Amagansett, East Hampton. The properties are vacant and comprise 3.5 acres. Peters also owns an adjacent property, which is his primary residence. Peters claims to be the managing member of the other co-owning plaintiff. The complaint alleges that on May 11, 2012, Sasfox Associates, a New York partnership, filed with the Secretary of State a certificate of conversion to Sasfox Associates LLC, which is now the successor entity.
On October 14, 1992, Sasfox Associates became the owner of the property at 42 La Foret Lane, by deed from defendant, Richard J. Smolian, and two other nonparties. That bargain and sale deed conveyed the parcel “subject to” a right of first refusal to repurchase the land in favor of each of the individual defendants, also identified as the “Smolian Family.”
Thereafter, by bargain and sale deed dated June 24, 1997, Peters and Sasfox Associates, as tenants in common, became the owners of the property at 46 La Foret Lane, by deed from defendant, Richard J. Smolian and one other nonparty. That *412 bargain and sale deed similarly conveyed the parcel “subject to” a right of first refusal to repurchase the land in favor of each of the individual defendants, identified as the “Smolian Family.”
Subsequently, Sasfox Associates, as executed by Peters, conveyed the parcel at 42 La Foret Lane to coplaintiff, Sasfox Associates LLC, by quitclaim deed dated May 23, 2012. That deed also conveyed the parcel “subject to” the same right of first refusal to repurchase the land to each of the individual defendants. No similar quitclaim deed was executed by Sasfox Associates with regard to the parcel at 46 La Foret Lane to co-plaintiff, Sasfox Associates LLC.
On May 22, 2014, Peters entered into a fully executed contract of sale with nonparty, Town of East Hampton (Town), to sell the subject properties, together with an additional parcel, located at 82 Stony Hill Road, for the purchase price of $3,600,000, payable at closing. The only permitted exceptions set forth in the contract, aside from real estate taxes, were set forth in paragraph 9 thereof, namely, “ [z] oning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use.”
Peters represented, at paragraph 11, that he “is the sole owner of the Premises and has full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract.” The closing date was set for 60 days from the seller’s receipt of a fully executed contract of sale and, pursuant to paragraph 16, subject to and conditioned upon, as a condition precedent, “[t]he accuracy, as of the date of Closing, of the representations and warranties of seller made in this contract.”
A rider to the contract conveyed the parcels, at paragraph 31, subject to:
“(b) Covenants, easements, and restrictions of record, if any, provided same do not render title to the Premises unmarketable or prohibit the use or dedication of the Premises as open space and parkland for use by the general public.
“(c) A public hearing and authorizing resolution of the Town Board of the Town of East Hampton authorizing the Town’s purchase of the subject premises.”
*413 The Town Board of the Town of East Hampton authorized the Town’s purchase of the subject premises, and the additional parcel, on June 6, 2014. No history has been offered as to the right of first refusal issue during the ensuing months.
However, four months after entering into the above-described contract of sale, Peters and the Town executed a second, and rather self-serving rider to the contract, on September 18, 2014 and September 23, 2014, respectively, that set forth the following:
“40. Both Seller and Town acknowledge that the Town is purchasing the subject premises with the express understanding that the subject premises shall remain as open space, as authorized by Town Board Resolutions 2014-743 and 2014-744, attached hereto as Exhibit ‘A.’ This acquisition and the future management and stewardship of the subject premises shall be governed by Town Law § 64 (e).”
Thereafter, on October 1, 2014, defendant Richard J. Smolian, signed a waiver of only his right of first refusal as recited in the deeds described above. The waiver document was intended to be signed by each of the defendants, that is, the “Smolian Family.” The waiver was made in consideration of a payment by Peters of $50,000, at the time of the closing with the Town, but “only in the event that each member of the Smolian Family signs this Waiver.”
Apparently, Peters initiated negotiations with the answering defendants with the goal of buying out their preemptive rights. These discussions proved unavailing. Thereafter, in November and December of 2014, a newspaper campaign was commenced to urge the Smolian Family to relinquish their right of first refusal. This action was commenced by the filing of a summons and complaint on December 4, 2014.[1] Therein, the plaintiffs seek a judicial declaration that defendant Richard J. Smolian waived any right of first refusal under the subject deed; that the right of first refusal set forth in the deeds in favor of the answering defendants be declared invalid and unenforceable under the “stranger to the deed” rule; and that the plaintiff be declared free to convey the premises free and clear of any *414 claimed right of first refusal. In a separate second cause of action, the plaintiff seeks, in the alternative, a declaration that any defendants found to be possessed of an enforceable right of first refusal must match all of the terms of the contract of sale entered into by the plaintiffs and the Town of East Hampton. Unlike his codefendants, defendant Richard J. Smolian failed to appear herein by answer.
The record before the court demonstrates that Peters never extended to the defendants the opportunity to exercise their right of first refusal before or at any time after he entered into the May 22, 2014 contract of sale with the Town. Peters only offered the defendants the single option of waiving their right of first refusal, which only the defendant Richard J. Smolian exercised.
It is important in such cases to examine the language creating the right of first refusal.
“Subject to Declaration of Covenants and Restrictions in Liber 8665 cp 113.
“Subject to the right of Richard J. Smolian, Randy Smolian, Darielle Smolian, Jonathan Smolian or either of them (the ‘Smolian Family’) to exercise a right of first refusal, as hereinafter defined, to repurchase the Land. The right of first refusal shall remain in effect so long as the Smolian Family is the fee owner of Lot 30 on the subdivision map titled ‘Map of the Bell Estate’, which was filed in the Suffolk County Clerk’s office on July 25, 1979, as map number 6834. The right of first refusal shall entitle the Smolian Family to written notice by certified mail stating that the party of the second part has received a bona fide offer for the Land. After mailing of such notice, the Smolian Family shall have 10 days to agree to purchase the land upon the same terms and conditions as specified in the offer. If the Smolian Family does not exercise its right to purchase the land, the party of the second part shall be free to sell the property to the offer or in accordance with the terms of the offer, which must close within 120 days after written notice by the Smolian Family that it will not exercise its right to purchase the land. If the sale does not close within 120 days, the Smolian Family shall be entitled to a new 30 day notice of this right to first refusal.”
*415 Right of First Refusal
The enforceability of a right of first refusal was clearly set forth in LIN Broadcasting Corp. v Metromedia, Inc. (74 NY2d 54, 60 [1989]), wherein the Court explained “[t]he effect of a right of first refusal, also called a preemptive right, is to bind the party who desires to sell not to sell without first giving the other party the opportunity to purchase the property at the price specified.” Unlike an option, the right of first refusal “is a restriction on the power of one party to sell without first making an offer of purchase to the other party upon the happening of a contingency: the owner’s decision to sell to a third party” (74 NY2d at 60). “Under a right of first refusal, the only offer involved is one to be made in the future, if and when the owner reaches agreement with a third-party purchaser” (74 NY2d at 60).
The holder of the right of first refusal cannot compel an unwilling owner to sell; the right “merely requires the owner, when and if he decides to sell, to offer the property first to the party holding the preemptive right so that he may meet a third-party offer or buy the property at some other price set by a previously stipulated method” (Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156, 163 [1986]). Therefore, the grantor of a right of first refusal is obligated to give the holder of the right only an opportunity to buy the property.
A right of first refusal is a dormant right that is only triggered when an owner decides to sell the property to a third party at an agreed upon price (see Morrison v Piper, 11 NY2d 165, 170 [1990]). “Aright of first refusal does not, at the time it is given, include an operative offer and only becomes a right to purchase if and when the owner decides to sell, at which time it must be exercised or lost” (91 NY Jur 2d, Real Property Sales and Exchanges § 32; see Quigley v Capolongo, 53 AD2d 714, 715 [3d Dept 1976], affd 43 NY2d 748 [1977] [“merely an agreement that should the owner receive a bona fide offer to purchase the property during the term of the option, he will not accept the offer without giving the optionee the right to buy it on the same terms”]).
In Yudell Trust I v API Westchester Assoc. (227 AD2d 471, 473 [2d Dept 1996]) the Second Department concluded that a holder of a right of first refusal may create a “binding contract” with the grantor by exercising the right before the third-party contract expires.
*416 As stated by the Court of Appeals in Cipriano v Glen Cove Lodge #1458, B.P.O.E. (1 NY3d 53, 60 [2003]), “[a] right of first refusal is a right to receive an offer, and the grantor’s failure or refusal to extend the holder the opportunity to exercise the right constitutes a breach.”[2]
In essence, a right of first refusal is a dormant right until it is triggered and can even revert to dormancy by reason of an owner’s decision not to proceed with the proposed sale of the property during the time in which to exercise the preemptive right has not expired (see Kalimian v MTM Assoc., 280 AD2d 275 [1st Dept 2001]; Bloomer v Phillips, 164 AD2d 52 [3d Dept 1990]).
While a right of first refusal has often been deemed a form of an option to purchase, most treatises reject that comparison (25 Richard A. Lord, Williston on Contracts § 67:85 [4th ed 1990] [“Although options and so-called ‘rights of first refusal’ are sometimes confused, there is a clear and classic distinction ... A right of first refusal, or first right to buy, is not a true option but is a valuable prerogative”]; 3 Joseph M. Perillo, Corbin on Contracts § 11.3 at 468-469 [rev ed 1993] [“They are not offers and create no power of acceptance. These transactions create a right, a contractual right to ‘preempt’ another”]).
Peters claims that notwithstanding the limited, dormant right bestowed upon a holder of a right of first refusal, the defendants have an interest in land (see e.g. Morrison v Piper, 77 NY2d at 170 [“the holder of a right of first refusal, like the holder of any option, has an interest in land which is to vest, if at all, sometime in the future”]). Peters states that such implicates the “stranger to the deed” rule.
Stranger to the Deed Rule
As set forth in Matter of Estate of Thomson v Wade (69 NY2d 570, 573 [1987]), “[t]he long-accepted rule in this State holds that a deed with a reservation or exception by the grantor in favor of a third party, a so-called ‘stranger to the deed’, does not create a valid interest in favor of that third party” (citations omitted). In Matter of Estate of Thomson v Wade (69 NY2d 570 [1987]), a prior owner could not create an easement benefit- *417 ting land which he did not own. That owner, having already conveyed an adjoining parcel, could not “reserve” in the deed, upon the sale of the remaining parcel, an express easement appurtenant over the previously conveyed adjoining parcel for the benefit of the grantee of the remaining parcel.
The rule applies even where there is a clear and unequivocal intent on the part of the grantor to create an easement (see Lechtenstein v P.E.F. Enters., 189 AD2d 858 [2d Dept 1993]). In keeping with the rule, it has been held that for an easement to be effective, the dominant and servient properties must have a common grantor (see Beachside Bungalow Preserv. Assn. of Far Rockaway, Inc. v Oceanview Assoc., 301 AD2d 488 [2d Dept 2003]).
However, while New York still adheres to the stranger to the deed rule (see Dichter v Devers, 68 AD3d 805 [2d Dept 2009]), it is not universally applied. It has been held that the rule does not apply to a restrictive covenant in a deed. As explained in Nature Conservancy v Congel (253 AD2d 248, 252 [4th Dept 1999]):
“We note, however, that Thomson concerned the enforceability of an easement, not a restrictive covenant. Although restrictive covenants have been commonly categorized as ‘negative easements’ because they restrain servient landowners from making otherwise lawful uses of their property, a negative easement is not a true easement. An easement entitles the owner of land to use the land of another for some purpose. Indeed, the parties concede that the restrictive covenant in this case is not a conservation easement (see, ECL 49-0301). Furthermore, we note no cases following Thomson that apply to restrictive covenants; rather, they apply only to easements. This suggests that the rule enunciated in Thomson is limited to easements (a reservation or exception), and is not applicable to restrictive covenants, which do not constitute a reservation or exception” (citations omitted).
The case of Vogeler v Alwyn Improvement Corp. (247 NY 131 [1928]) and its progeny stand for the proposition that the owner of property can create a restrictive covenant for the benefit of a third party with respect to property while it is under his or her ownership. With the development of the third-party beneficiary doctrine in contracts law, some commentators believe that the *418 stranger to the deed rule serves no apparent purpose in modern law.[3]
Other exceptions to the stranger to the deed rule are recognized. In Clearmont Prop., LLC v Eisner (58 AD3d 1052 [3d Dept 2009]), the Court, under unique facts, noted an exception when the third party is found to be the real grantee under the deed. Additionally, in Basile v Rose (127 AD3d 1444 [3d Dept 2015]), the Court held that where the plaintiffs were not properly considered parties to the deed, the conveyance to them of a remainder interest was not precluded by the stranger to the deed rule since the rule ápplies to reservations and exceptions from conveyances, rather than remainders. Additionally, in Cerniglia v Church of the Holy Name of Mary (72 AD3d 862 [2d Dept 2010]), the Court simply refused to apply the stranger to the deed rule, due to the unique facts presented in the case.
However, the rule has been extended to invalidate a reservation of a life estate to a stranger to the deed (see Sganga v Grund, 1 AD3d 342 [2d Dept 2003]).[4]
In many instances, the stranger to the deed rule is not addressed. It appears that strangers to the deed were the right-holders in Whiteface Resort Holdings, LLC v McCutchen (52 AD3d 1106 [3d Dept 2008] [the Adirondack Company granted right of first refusal to Whiteface Inn, Inc., and its successors and assigns]) and additionally the rightholders in the contract described in CR Best Rd., LLC v Camps Mogen Avraham, Heller, Sternberg, Inc. (103 AD3d 1075 [3d Dept 2013]).
Moreover, in Morrison v Piper (77 NY2d at 169) the deeds in question recognized a rightholder’s first refusal rights in language similar to that of the instant case (“The above described parcel is subject to a ‘right of first refusal’ as set forth in the deed given by Lilian Teresa Maier to Robert C. *419 Morrison”). Additionally, in Morrison (at 168) the right of first refusal was binding on “the party of the second part, his heirs and assigns only during the life of Lilian Teresa Maier the party of the first part and those persons who directly take as a result of a gift by her or by her death.” Without considering the stranger to the deed rule, the Court gave effect “to the parties’ evident purpose of narrowly circumscribing the group of persons permitted to exercise the right” (id. at 172-173; see also Cipriano v Glen Cove Lodge #1458, B.P.O.E., 1 NY3d 53 [2003]; see brief for defendant-respondent in Cipriano v Glen Cove Lodge #1458, B.P.O.E., 297 AD2d 649 [2d Dept 2001], available at 2001 WL 34686186, *7 [herein the agreement/ stipulation was for the benefit of “the heirs, executors, administrators and assigns of the parties of this instrument, and to any subsequent owners of the premises”]).
Analysis
Upon close examination of Peters’ contention that this court must apply the stranger to the deed rule to a right of first refusal, the court must conclude that the right of first refusal is not a reservation or exception from a conveyance. “A reservation is always something taken back out of that which is clearly granted, while an exception is some part of the estate not granted at all” (5-51 Warren’s Weed, New York Real Property § 51.01 [2015]).
“Where a grantor excepts a certain described portion of the property covered by the general description from the operation of the deed, he retains title to the part excepted. Where, however, there is a reservation instead of an exception, the fee title passes to the grantee subject to a reservation of the rights reserved to the grantor” (5-51 Warren’s Weed, New York Real Property § 51.02 [2015]).
A “reservation” in a deed, or other instrument, is of a thing not in being at the time of the grant, but which is merely created by it. An “exception” is a part of the thing granted. To make an exception in a deed valid it must be of a part of the thing previously described and the part excepted must be particularly excepted and set forth (see generally Gould v Glass, 19 Barb 179 [1855]; Allen v Trustees of Great Neck Free Church, 240 App Div 206 [2d Dept 1934], affd 265 NY 570 [1934]).
Reservations and exceptions are deemed to be a species of special clauses in a deed, along with conditions, covenants, recitals, and appurtenances. As explained in The Law of Titles, by Julius L. Sackman (1st ed 1959, § 3.71):
*420 “[A] reservation implies the carving out of some new interest out of that which is granted, and which was not in existence prior to the grant, and an exception implies the exclusion of an existing right or interest from that which is granted . . .
“A reservation refers, generally, to an easement or right to be exercised in relation to the estate granted such as a right to use or occupy or to remove timber therefrom. An exception, on the other hand, has reference, generally, to the description of the property conveyed and excludes the excepted portion therefrom” (footnotes omitted).
These definitions are universally recognized (see Joseph Rasch & Robert F. Dolan, 1 NY Law & Practice of Real Property § 18:24 [2d ed]; Joyce Palomar, 2 Patton & Palomar on Land Titles § 346 [3d ed] [“For example, it is appropriate to ‘except the east 100 feet,’ but to ‘reserve a life estate’]). Here, based upon the recognized definitions, the court concludes that the right of first refusal cannot constitute a reservation or exception from the deeds conveyed to Peters. Additional support for this court’s determination is the fact that the right of first refusal at issue does not run with the land. As further explained in Warren’s Weed (§ 51.03):
“Since under an exception in the deed title to the land excepted remains in the grantor, no question of whether or not it runs with the land can arise. This, however, is not true where a reservation is concerned. Here the fee to the land is conveyed and merely a right is reserved. This right ordinarily runs with the land. Thus, it has been held that a reservation of a right of way by a grantor, though not reserved to his heirs, runs with the land. . . . The rules applying to easements in this regard will undoubtedly apply to a reservation.”
However, courts have held that rights of first refusal similar to that at issue do not run with the land as real covenants because they do not touch and concern the land. In Clarke v Caldwell (132 AD2d 171 [3d Dept 1987]) a similar right of first refusal was found to be a personal covenant not binding on the successors of the grantors and grantees and did not constitute a real covenant that runs with the land, as explained by the holding in Neponsit Prop. Owners’ Assn. v Emigrant Indus. Sav. Bank (278 NY 248, 254-255 [1938]). Similar rights of first refusal have been held to be a “personal agreement” (Adler v *421 Simpson, 203 AD2d 691, 693 [3d Dept 1994]) and an agreement that was “personal in nature” (Smith v Estate of LaTray, 161 AD2d 1178, 1179 [4th Dept 1990]). In Newpar Estates v Barilla (4 AD2d 186, 188 [1st Dept 1957]), the right of first refusal was declared to be a “personal right,” and in Levy v Blue Ridge Constr. Co. (74 Misc 2d 676, 678 [Sup Ct, Westchester County 1973]), the right of first refusal was labeled a “personal covenant” and “a valuable contract right” (see also 10-101 Warren’s Weed, New York Real Property § 101.01 [3] [2015]). Here, the right of first refusal confines performance to the persons who originally held it, that is, the four named members of the Smolian Family.[5]
This is not a situation where a grantor specifically reserves possession of premises during his or her life, as a life estate (see Stoutenburg v Stoutenburg, 265 App Div 570 [3d Dept 1943]; see also Voght v Voght, 64 AD3d 984 [3d Dept 2009]). Here, the preemptive right is a personal right of the four individuals named in the deed, in an interest not created at that time, but only upon future action of the grantor. As set forth above, a right of first refusal gives no present rights to acquire title but only gives a right contingent upon the grantor of the right entering into dealings with a third party. Corbin on Contracts (§ 11.3 at 470-471; see also at 476), makes clear that the preemptive right is a contractual right:
“Generally, it is a contractual right to preempt another because the right is conditional on the owner’s decision that an offer from a third party is acceptable. More specifically, the right is subject to an agreed condition precedent, typically the owner’s receipt of an offer from a third party and the owner’s good-faith decision to accept it. Only then can the holder of the right decide whether or not to create a contract on the same terms that the owner is willing to accept from the third party. More precisely, the occurrence of these events (owner’s receipt of an offer and the good-faith decision to accept it) satisfies the condition precedent, which ‘triggers’ the right of first refusal that ‘ripens’ into an option. The option then can be exercised like *422 any other option contract” (footnotes omitted).
The claim by Peters that as a result of the preemptive right the defendants have an interest in land, confounds the nature of that right. As explained in Corbin on Contracts (§ 11.16 at 594-595):
“The option holder has priority over the third-party purchaser with notice of the option and may maintain a suit for specific performance against the third-party purchaser. This is supported by the greater number of decisions. The reason is not that the option holder has an ‘interest’ in the land, but because the option holder has contract rights that ought to be respected by third persons. It is as a result of this and not as a reason for it, that we may properly say that the option contract has created an equitable interest in the land.”
As held in Cipriano v Glen Cove Lodge #1458, B.P.O.E. (1 NY3d 53, 61 [2003]), “an owner of land subject to a right of first refusal is obligated contractually to make an offer to the rightholder.” As noted above, there is no offer inherent in a right of first refusal when it is given; there is only a contractual obligation to make an offer to the holder once the owner has decided to sell to a third party. The rule that a reservation creating an easement or a life estate cannot be made in favor of a stranger to the conveyance is simply inapplicable to a preemptive right. A preemptive right does not create a property interest in a stranger to the deed, as that term is understood and applied in Matter of Estate of Thomson v Wade (69 NY2d 570 [1987]).
The court acknowledges the rule that an exception or reservation to a third person not a party to the deed is void and is ineffectual to convey any interest or estate whatsoever in the lands described to a stranger to the conveyance (see Beardslee v New Berlin Light & Power Co., 207 NY 34 [1912]). However, based upon all of the above, the right of first refusal, which is repeatedly set forth in the deeds in question, does not constitute an exception or reservation. Nor does the fact that rights of first refusal have been held to be subject to the rule against perpetuities (see Morrison v Piper, 77 NY2d 165 [1990]) mandate that it is also subject to the stranger to the deed rule.
The fact that the preemptive right is contained in an instrument of record does not change the fundamental contractual nature of the preemptive right. It embodies a contract right— *423 the right to purchase — and the fact that the world is given notice of this right in a recorded deed, simply prevents any other buyer from claiming the equities of an innocent third-party purchaser.
Additionally, the words “subject to” used in their ordinary sense mean subordinate to, subservient to or limited by. There is nothing in the use of the words “subject to” which would suggest the creation of affirmative rights or connote a reservation or exception of property rights that would implicate the stranger to the deed rule (see e.g. Winoker v Haring, 17 AD3d 454 [2d Dept 2005]).
Importantly, public policy considerations for invoking the stranger to the deed rule, that is, the importance of stability and certainty in title to real property (see Estate of Thomson v Wade, 69 NY2d at 574), are significantly more important when considering easements and life estates, as opposed to a preemptive right. The protection of bona fide purchasers and the avoidance of conflicts of ownership is not prejudiced by a short duration preemptive offer to a rightholder, pursuant to express language in a prior recorded deed, to possibly repurchase the property.
Nor does the right of first refusal violate the rule against remote vesting or perpetuities (EPTL 9-1.1 [b]). The language in the deed creating the preemptive right lists four members of the Smolian Family, that is, four measuring lives are identified. Additionally, the preemptive right contains a further restriction, that is, it “shall remain in effect so long as the Smolian Family is the fee owner on Lot 30 of the subdivision map.” The rule provides that the “lives measuring the permissible period of vesting [not] be ... so numerous as to make proof of their end unreasonably difficult” (EPTL 9-1.1 [b]; see Lewis M. Simes & Allan F. Smith, 3 The Law of Future Interests § 1223 at 108-112 [2d ed 1956]). Here, the end of the four measuring lives is capable of proof.
Furthermore, the preemptive right is valid under the common-law rule against unreasonable restraints on alienation. Here, the 10-day duration “to agree to purchase the land upon the same terms and conditions as specified in the offer,” satisfies the reasonableness requirement for such preemptive rights (see Wildenstein & Co. v Wallis, 79 NY2d 641, 652 [1992] [“Preemptive rights conditioned upon payment equal to a third party’s offer are generally reasonable; under this method of price determination, the owner suffers no legally cognizable *424 loss”]). Moreover, as historically held, unreasonable restraints on alienation are such that tend to prevent full utilization of land, which is contrary to the best interests of society. The purpose behind the rule is to ensure the productive use and development of property by simplifying ownership, facilitating exchange and freeing property from unknown or embarrassing impediments to alienability (see De Peyster v Michael, 6 NY 467, 494 [1852]). Here, the fact that with regard to the parcels there may be a second purchaser, that is, a member of the Smolian Family, does not in any way constitute an unreasonable restraint on alienation.
Additionally, the statute of frauds was satisfied even though the answering defendants were not parties to and did not sign the deed. Executory contracts are governed by General Obligations Law § 5-703 (2) (“A contract for the . . . sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged” [emphasis added]). As noted in Kaplan v Lippman (75 NY2d 320, 324 n [1990]), “[t]he absence of a signature by the party seeking to enforce the agreement is without legal significance” (see also Muscatello v Artco Chem., 251 AD2d 882 [3d Dept 1998]). Since there is no dispute that Peters is the party to be charged and that he was a party to and did sign a deed, the statute of frauds was fully satisfied.
Moreover, in light of the fact that coplaintiff, Sasfox Associates LLC, took title to the parcel at 42 La Foret Lane by quitclaim deed dated May 23, 2012, which expressly set forth the right of first refusal from Peters, the predecessor in title, plaintiffs cannot deny knowledge of actual notice of the right of first refusal. Therefore, both plaintiffs are estopped from denying the existence of the right that Peters placed in the subsequent deed (see generally Goldstein v Jones, 32 AD3d 577 [3d Dept 2006]; Strnad v Brudnicki, 200 AD2d 735, 737 [2d Dept 1994] ).[6]
As set forth in Warren’s Weed (§ 51.04), “[i]t should be borne in mind that a purchaser of land is chargeable with notice by implication of every fact which would be discovered by an ex *425 amination of the deed and of every fact as to which a purchaser with reasonable prudence or diligence ought to become acquainted” (see also 4-37 Warren’s Weed, New York Real Property § 37.76 [2015] [“The grantee having accepted the deed and taken possession under it is bound by the covenants therein contained as effectually as if he had signed them”]).
Finally, if the parties truly intended to keep the properties in their “natural state” as repeatedly asserted by Peters, the deeds could have included a restrictive covenant to that effect, including the deed from Peters to the new LLC (see Nature Conservancy v Congel, 296 AD2d 840 [4th Dept 2002], lv denied 99 NY2d 502 [2002]). Instead, each deed contained the recognition of the Smolian Family’s first refusal rights.[7]
The court thus finds that the right of first refusal in favor of the answering defendants is valid and enforceable and not subject to the “stranger to the deed” rule and that the plaintiffs are not free to contract or convey without regard to the answering defendants’ preemptive rights of first refusal. Those portions of the instant motion wherein the plaintiffs seek declaratory relief on their first cause of action is denied with respect to the answering defendants, to whom, the court awards reverse summary judgment and hereby declares that the “stranger to the deed” rule is not applicable and thus does not invalidate nor render unenforceable the preemptive right of first refusals possessed by answering defendants, Randy Smolian, Jonathan Smolian and Darielle Smolian. The court further declares that the plaintiffs are not free to convey the subject property without regard to said right of first refusal. Those portions of the motion in which the plaintiffs seek declaratory relief on their first cause of action with respect to a waiver of any right of first refusal on the part of Richard J. Smolian is denied since he defaulted in appearing herein by answer (see CPLR 3212 [b]).
*426 Second Cause of Action
The motion seeks additional relief, in the nature of a declaration under the second cause of action, that if any defendant is found to possess a right of first refusal, the obligations of the rightholder should include plaintiffs’ claim that the rightholder must match all the terms of the contract with the nonparty Town, including the second rider. Peters relies upon caselaw that holds that a right of first refusal may be extinguished where the third-party offer is not matched (see Story v Wood, 166 AD2d 124 [3d Dept 1991]).
Here, however, the contemplated sale to the Town was not conditioned upon Peters having obtained waivers of all rights of first refusal held by the Smolian Family, nor did it disclose the existence of those rights.
It is the claim of the answering defendants that Peters has denied them the preemptive right, since Peters, as the owner, was required to afford the Smolian Family an opportunity to buy the property prior to conveying the land to the Town. They urge the court to find that Peters’ failure to extend to them an offer to purchase the properties violated their right of first refusal.
As noted in LIN Broadcasting Corp. v Metromedia, Inc. (74 NY2d at 62),
“[t]he obvious effect of the right of first refusal is to give to the nonselling party a power to control and restrict the other party’s right to sell to a third party. The clause itself operates as a restriction by preventing a party from making a sale without first making the first refusal offer. When, as here, the selling party has fully complied with its obligations under the first refusal clause by not selling without first making the required offer, the nonselling party has received the bargained-for performance. The intended effect of the clause as a means of restricting or preventing a sale to a third party has been realized.”
Under the facts as presented, the rightholder defendants have not received the bargained-for effect of the first refusal clause. Peters never gave the defendants the opportunity to exercise their right of first refusal and did not make the contract subject to defendant’s rights. While they were asked to waive their right of first refusal, the preemptive right was never offered to them, as required by the deed clause.
*427 It is axiomatic in law that an offer may be accepted only by the person or persons for whom it is intended (see Restatement [Second] of Contracts § 29 [1]). Here, the answering defendants have not been afforded their preemptive right expressly set forth in the respective deeds. Based upon all of the above, with regard to the second cause of action, the court refuses to grant Peters the relief he seeks since no controversy has ripened and he is merely seeking an advisory opinion. The plaintiffs are seeking an advance advisory opinion as to possible future events which are not at all certain to occur (see Waterways Dev. Corp. v Lavalle, 28 AD3d 539 [2d Dept 2006]; Fairhaven Props. v Garden City Plaza, 119 AD2d 796 [2d Dept 1986]; Zwarycz v Marnia Constr., Inc., 102 AD3d 774 [2d Dept 2013]). Since no judicable controversy exists at this time, the second cause of action is dismissed.
In response to the second cause of action, the answering defendants have raised the issue of a violation of the covenant of good faith and fair dealing. As held by the Court in 511 W. 232nd Owners Corp. v Jennifer Realty Co. (98 NY2d 144, 153 [2002]):
“In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance. This covenant embraces a pledge that ‘neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract’ ” (citations omitted).
An implied covenant of good faith and fair dealing is implicit in an agreement granting the right of first refusal (see Jeremy’s Ale House Also, Inc. v Joselyn Luchnick Irrevocable Trust, 22 AD3d 6 [1st Dept 2005]). When a property owner and a potential buyer attempt to circumvent another’s right of first refusal, the covenant of good faith and fair dealing is breached (see Cipriano v Glen Cove Lodge #1458, B.P.O.E., 1 NY3d at 56). As the Court noted in Quigley v Capolongo (53 AD2d 714, 715 [3d Dept 1976], affd 43 NY2d 748 [1977]), “[w]hile plaintiffs’ right to purchase the property might never have ripened into an absolute one, defendant-owners owed them the obligation of dealing in good faith.”
Under the terms of the preemptive right, the Smolian Family was entitled
“to written notice by certified mail stating that the party of the second part has received a bona fide of *428 fer for the Land. After mailing of such notice, the Smolian Family shall have 10 days to agree to purchase the land upon the same terms and conditions as specified in the offer.”
Here, on May 22, 2014, Peters entered into a fully executed contract of sale with nonparty Town, but never notified the Smolian Family of the offer. Four months later, Peters and the Town entered into a second rider, which apparently seeks to ensure the sterilization of the properties in question. Such could be seen to be an attempt to potentially frustrate or prevent the performance of the preemptive right, since notice of same had not been promptly mailed. The belated execution of the second rider could be viewed as an effort to diminish the right of first refusal.
Here, by failing to make the contract with the nonparty, the Town, contingent upon a waiver by the holders of the right of first refusal, a grantor breaches its obligations under a right of first refusal (see Cipriano v Glen Cove Lodge #1458, B.P.O.E., 1 NY3d at 61 n 3; see also Alford v Estate of Wrench, 172 AD2d 965 [3d Dept 1991]). However, the court notes that the defendants’ answer fails to seek affirmative relief in the way of specific performance or damages for any injury that may have been suffered as result of the breach. In any event, the right of first refusal still casts a cloud over the title and defendants may seek compensation from those who want them to waive their right.
It appears that, under the circumstances, Peters cannot deliver marketable title to the Town and the Town has a lawful excuse to cancel the contract due to the material breach of the contractual obligations. If such occurs and the third-party transaction is abandoned or expires, the right of first refusal is extinguished upon the abandonment of the contract and the defendants will continue to hold the same rights they held at the outset of negotiations with the Town.
As a final note, just as it is settled that the grantor of a right of first refusal cannot defeat the right merely by subdividing a parcel into smaller pieces and conveying only a partial interest (see generally McCormick v Bechtol, 68 AD3d 1376 [3d Dept 2009]), or by offering the property for sale only as part of a larger parcel, that is, “bundling property subject to a right of first refusal with other property” (CR Best Rd., LLC v Camps Mogen Avraham, Heller, Sternberg, Inc., 103 AD3d 1075, 1077 [3d Dept 2013]; see also Whiteface Resort Holdings, LLC v Mc- *429 Cutchen, 52 AD3d 1106 [3d Dept 2008]), it would appear that Peters cannot defeat the right of first refusal by eliminating one of the more important sticks from the “bundle of sticks” that constitute the rights of ownership of real property, that is, the right to utilize the property in keeping with the applicable zoning ordinances (see generally United States v Craft, 535 US 274, 278 [2002]; Lucas v South Carolina Coastal Council, 505 US 1003, 1019 [1992]). However, these may be issues for a future judicial controversy as they are not now justiciable due to the plaintiff’s failure to convey the terms of the offer to purchase by the Town to the defendants so that they could exercise their preemptive right of first refusal, should they have been so inclined.
In light of all of the above, the court denies the motion to the extent asserted against defendant, Richard J. Smolian, who failed to appear herein by answer, as the remedy of summary judgment is not available against a defendant in default of answering (see CPLR 3212 [b]). The motion is denied with respect to the first cause of action against the answering defendants. Since there are no questions of fact left for determination, the court awards reverse summary judgment to the answering defendants and hereby declares that the “stranger to the deed” rule is not applicable and thus does not invalidate nor render unenforceable the preemptive rights of first refusal possessed by answering defendants, Randy Smolian, Jonathan Smolian and Darielle Smolian, under the subject deeds (see Lanza v Wagner, 11 NY2d 317, 334 [1962]). The court further declares that the plaintiffs are not free to convey the subject property without regard to said right of first refusal. The motion is further denied with respect to the plaintiff’s second cause of action due to the absence of a justiciable controversy and said cause of action is dismissed (see CPLR 3001).

. Currently, the parcel located at 42 La Foret Lane is the subject of a foreclosure action (PMB Mortgages, LP v Sasfox Associated LLC, Sup Ct, Suffolk County, Pitts, J., index No. 4558/2014). Notably, however, a foreclosure sale does not trigger a right of first refusal (see Huntington Natl. Bank v Cornelius, 80 AD3d 245 [3d Dept 2010]).

. In the Cipriano case, the right of first refusal was set forth in a separate written stipulation between the parties, but not set forth in the subsequent bargain and sale deed. The Court of Appeals refused to address the issue of whether the right was extinguished by the failure to reserve same in the deed, since the issue was not preserved for review.

. “The Restatement eliminates the rule because it serves as a trap for the unsophisticated buyer or grantee and provides windfalls to landowners seeking to relieve their land of freely negotiated servitudes. Section 2.6 provides that parties can freely create servitudes to benefit third parties” (Susan F. French, Highlights of the New Restatement [Third] of Property: Servitudes, 35 Real Prop, Probate & Trust J 225, 232 [2000]; see also Restatement [First] of Property § 472, Comment b).

. The holding in Sganga has been criticized (see Bagwell, Trouble for Title Underwriters, NYLJ, Feb. 11, 2004 at 7, col 3 [arguing that the holding in Frierson v Blumberg (10 Misc 2d 295 [Sup Ct, Queens County 1958]) should have been controlling]). It has been argued that the Frierson case simply addressed the issue of whether the life estate survived a subsequent conveyance (see brief for plaintiffs-appellants in Sganga v Grund, 1 AD3d 342 [2d Dept 2003], available at 2002 WL 32376779).

. The preemptive right at issue is unlike an option contained in a lease which passes to an assignee upon assignment of the lease (see Antler v Jamaica 163 Location Corp., 241 AD2d 437 [2d Dept 1997]; Gilbert v Van Kleeck, 284 App Div 611 [3d Dept 1954]; Garelik v Rennard, 116 Misc 352 [Sup Ct, NY County 1921]).

. Although the issue is not addressed by the parties, it does not appear that this internal transfer triggered the right of first refusal (see generally New York Tile Wholesale Corp. v Thomas Fatato Realty Corp., 13 AD3d 425 [2d Dept 2004]; Linden Blvd. v Elota Realty Co., 196 AD2d 808 [2d Dept 1993]).

. Since the right of first refusal is clear and unambiguous, there is no need for the court to consider the extrinsic evidence offered by Peters. However, the suggestion by Peters that defendant Richard J. Smolian negotiated the right of first refusal, for so long as the Smolian Family owned lot 30, so they could buy back the land and keep it preserved before it was sold to others for development, does not mean that the intention of the Smolian Family was to keep the properties “forever wild.” The preemptive right reads that while the Smolian Family owns lot 30, they desire the opportunity to purchase the properties. If they decided to reclaim ownership of the properties, no restriction on the use of the lands is imposed.